[No. B027690. Second Dist., Div. Three. July 22, 1988.]

MARY L. CUMMINGS, Plaintiff and Appellant, v.
FIRE INSURANCE EXCHANGE, Defendant and Respondent.

1408

**COUNSEL**

Bernard Grossman and Walter Krauss for Plaintiff and Appellant.

Ronald P. Kaplan, Berger, Kahn, Shafton & Moss, Craig S. Simon and Julia A. Mouser for Defendant and Respondent.

OPINION

**CROSKEY, J.**—Plaintiff Mary L. Cummings, (plaintiff), appeals from a summary judgment granted to defendant Fire Insurance Exchange (defendant),[1] on her complaint seeking damages from defendant for its failure to pay a property damage claim and its allegedly malicious instigation of an unsuccessful criminal prosecution of plaintiff. Because the record demonstrates (1) that plaintiff knowingly and wilfully filed a false claim on a casualty policy issued by the defendant and (2) that defendant had a reasonable basis for believing that plaintiff had violated the law in so doing, we affirm the judgment.

## FACTUAL BACKGROUND

In her complaint, plaintiff alleged claims for breach of contract, false imprisonment, malicious prosecution, tortious breach of contract (which also included an allegation of a violation of Insurance Code section 790.03, subdivision (h)(5)) and intentional infliction of emotional distress. Each of these alleged causes of action arises from a claim which plaintiff made against a casualty insurance policy issued to plaintiff by defendant. Her claim was for damages sustained when her home and its contents were vandalized. The policy contains a provision (hereinafter sometimes referred to as the fraud and concealment provision) which states: "We do not cover an insured who has concealed or misrepresented any material fact or circumstance relating to this insurance, before or after the loss."[2]

The vandalism occurred May 1, 1983, and plaintiff reported it to defendant the next day. Within a month, plaintiff's premises had been almost completely repaired. Defendant expended $18,146 for repairs and $800 for living expenses for plaintiff.

On May 17, 1983, defendant received a call from one of plaintiff's neighbors, a Mr. Wiley. He stated that another neighbor, Mr. Rodriguez, had told him that on the day the vandalism occurred, plaintiff's son was in the premises and there was screaming, commotion and things being broken. In order to determine the facts, defendant retained an investigator. On May 24, 1983, the investigator interviewed plaintiff and recorded her statement concerning the events of May 1. In her statement, plaintiff gave a false

---

[1] In addition to defendant Fire Insurance Exchange, plaintiff named as defendants Farmers Insurance Exchange and Farmers Insurance Group. However, we are not concerned with such other defendants in this appeal. They are not actually parties hereto. Defendant was erroneously sued in this action under these names, a confusion which was cleared up upon the filing of its answer.

[2] This is a paraphrase of the fraud and concealment language incorporated into California's "Standard Form" fire insurance policy by Insurance Code section 2071.

version of those events.[3] The next day, the investigator interviewed Mr. Wiley who gave him Mr. Rodriguez's account of the incident. Mr. Wiley also indicated that plaintiff's son was living with plaintiff.

Thereafter, on August 25, 1983, defendant examined plaintiff under oath. During that examination, she initially repeated the false version of what occurred; however, when she was confronted with the information which defendant's investigation had uncovered, she changed her story and finally gave a true accounting of the vandalism to her home.

Based on plaintiff's admitted misrepresentations,[4] defendant denied further payments on her claim and reported the matter to the criminal authorities. Plaintiff was arrested for violation of Insurance Code section 556, which makes it a crime to knowingly present a false claim for payment of a loss.[5] She was bound over for trial at her preliminary hearing but the charges were later dismissed when the superior court granted her Penal Code section 995 motion (although it is not clear from the record before us upon what ground(s) the motion was granted).

### CONTENTIONS ON APPEAL

Plaintiff contends on appeal that issues of fact existed with respect to the materiality of the alleged misrepresentation and defendant's reliance thereon and that the trial court erred in determining that, as a matter of law, plaintiff could assert no claims for malicious prosecution, false imprisonment or emotional distress. She argues that summary judgment was therefore improper.

---

[3] What plaintiff told the investigator during her recorded statement was that on the day the vandalism occurred, she left home in the morning and returned that evening to discover the damage. She said there was no one home when she left and that her son did not live with her. She stated she did not know who had caused the damage to her home and taken her personal property. The actual facts are that the vandalism was committed by plaintiff's son acting in a rage of anger during an argument over a utility bill. Plaintiff was present when the damage was occurring and was driven out of her home at that time by her son, at the point of a gun, just shortly after he threatened to kill her if she told anyone about what he had done. In addition, it does appear from the record that there is sufficient evidence to support an inference that plaintiff's son did in fact live with her. Plaintiff's son was later convicted of killing a police officer and is now in prison. Plaintiff asserts she misrepresented the facts to defendant because she feared for her own safety.

[4] During a deposition taken by defendant in the instant action, plaintiff admitted lying to the investigator on May 24, 1983, and to the examiner on August 23, 1983, regarding the facts surrounding the vandalism.

[5] Insurance Code section 556 was amended by Statutes 1986, chapter 1324, section 1 in ways not important to this case. At the time of plaintiff's arrest, section 556 stated in pertinent part: "It is unlawful to: [¶] (a) Present . . . any false or fraudulent claim for the payment of a loss under a contract of insurance."

## Discussion

■ "Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no triable issue of fact and that the moving party is entitled to a judgment as a matter of law. [Citations.]" (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].) Thus, issue finding and not issue resolution characterizes a hearing on a motion for summary judgment. ■ All doubts about granting such a motion must be resolved against the moving party, who bears the burden of producing evidence which establishes the invalidity of the claims of the adverse party. (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134], and cases cited therein.) Our review of the record convinces us that the defendant has met its burden on all of plaintiff's causes of action.

### 1. *Breach of Contract (Including the "Tortious Breach" Claim)*

Plaintiff's first and fourth causes of action, for breach of contract and tortious breach of contract,[6] allege a wrongful refusal by defendant to pay plaintiff's entire claim. Defendant's answer asserts as an affirmative defense that the insurance policy was voided, in accordance with its fraud and concealment provision, because plaintiff made material concealments and misrepresentations in the processing of her claim. ■■ The motion for summary judgment focused on this affirmative defense.[7] In neither her

---

[6] In view of our conclusion as to the defendant's right to void the policy (and thus its liability thereunder) we do not need to discuss the circumstances under which the alleged conduct of the defendant might constitute a *tortious* breach of the covenant of good faith implied in the insurance contract. With respect to plaintiff's additional claim, which she included in her fourth count, that defendant's conduct also constituted a violation of Insurance Code section 790.03, subdivision (h)(5), we find no basis in this record for the conclusion that defendant in any way violated *any* provision of subdivision (h). Moreover, plaintiff offered no factual or legal support for her allegation in her opposition to the summary judgment motion and made no issue of the point in her brief on appeal. We therefore deem the issue to have been waived. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, at pp. 469-471.)

[7] In its motion for summary judgment, defendant relied on Insurance Code section 334 and associated cases to support its assertion that the misrepresentations made by plaintiff are material. Section 334 states: "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." On appeal, it is plaintiff who relies on section 334 cases; defendant *now* argues (correctly) that section 334 is not applicable to the instant case because it relates to statements made in *applications* for insurance, not statements made in an insured's claim. The materiality of a representation made in an application for a contract of insurance is determined by a *subjective* standard (i.e., its effect on the *particular* insurer to whom it was made) and rescission will be allowed even though the misrepresentation was the result of negligence or the product of innocence. (*Imperial Cas. and Indem. Co.* v. *Sogomonian* (1988) 198 Cal.App.3d 169, 182, fn. 10 [243 Cal.Rptr. 639].) On the other hand, in order to void a policy based upon the insured's violation of the standard fraud and concealment clause (and/or Ins. Code, § 556), the false statement must have been knowingly and wilfully made with the intent (ex-

opposition to that motion nor in her briefs on appeal does plaintiff deny that she misrepresented to defendant the facts surrounding the vandalism of her property.

On appeal plaintiff asserts that the trial court erred in granting summary judgment on the breach of contract causes of action because certain factual issues are still unresolved. She contends that whether she lied as to any *material* facts, whether she *intended to defraud* defendant and whether defendant *relied* on her misrepresentations are all issues which a trial court cannot properly resolve in a motion for summary judgment, because they are for a jury's consideration. However, these arguments ignore the body of law which has developed during the past 100 years with respect to the "fraud and concealment" provisions found in most property insurance policies.

Our review of that law begins with a United States Supreme Court case, *Claflin* v. *Commonwealth Insurance Co.* (1884) 110 U.S. 81 [28 L.Ed. 76, 3 S.Ct. 507]. *Claflin* involved one William Murphy, assignee of the original owner of certain dry goods and the policies of insurance issued by defendant insurance companies on those dry goods. Plaintiffs in the case were in turn assignees of Mr. Murphy, who had assigned the policies and his claims under them to plaintiffs after the dry goods were damaged by fire. The policies all contained fraud and concealment provisions similar to the one in the instant case.

The evidence in *Claflin* showed that when Murphy appeared for examination by defendants' agent concerning his loss and claim, he gave false information relating to the consideration he paid his assignor for that stock. He did so not to deceive defendants but rather to make a statement which would be consistent with the one he had previously made to a commercial agency in hopes of securing commercial credit. The answer filed by defendants alleged that the sale to Murphy was fictitious, that he never gave consideration for it and that consequently he had no insurable interest in the goods. At trial, plaintiff requested a jury instruction to the effect that even if Murphy's false statements were made on a material matter, they would not constitute a defense to plaintiff's action if Murphy made them for the purpose of protecting himself against the statement he had made to the credit agency and not for the purpose of deceiving and defrauding defendants. The trial court refused the instruction and defendants received a verdict in their favor. (*Claflin* v. *Commonwealth Insurance Co., supra,* 110 U.S. at pp. 84-86 [28 L.Ed. at pp. 76-77].)

The Supreme Court affirmed the judgment, saying "The object of the provisions in the policies of insurance, requiring the assured to submit

press or implied) of deceiving the insurer. The materiality of the statement will be determined by the *objective* standard of its effect upon a *reasonable* insurer.

himself to an examination . . . was to enable the company to possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to its rights, to enable it to decide upon its obligations, and to protect it against false claims. And every interrogatory that was relevant and pertinent in such an examination was material, in the sense that a true answer to it was of the substance of the obligation of the assured. A false answer as to any matter of fact, material to the inquiry, knowingly and willfully made, with intent to deceive the insurer, would be fraudulent. . . . And if the matter were material and the statement false, to the knowledge of the party making it, and willfully made, the intention to deceive the insurer would be necessarily implied, for the law presumes every man to intend the natural consequences of his acts.

"
. . . . . . . . . . . . . . . . . . . .

"The fact whether Murphy had an insurable interest in the merchandise covered by the policy was directly in issue between the parties. By the terms of the contract, he was bound to answer truly every question put to him that was relevant to that inquiry. His answer to every question pertinent to that point was material, . . . so that every false statement on that subject, knowingly made, was intended to deceive and was fraudulent.

"And it does not detract from this conclusion to suppose that the purpose of Murphy in making these false statements was not to deceive and defraud the companies, . . . but for the purpose of preventing an exposure of the false statement previously made to the commercial agency in order to enhance his credit. The meaning of that we take to be simply this: that his motive for repeating the false statements to the insurance companies was to protect his own reputation for veracity, and that he would not have made them but for that cause. But what is that, but that he was induced to make statements, known to be false, intended to deceive the insurance companies, lest they might discover, and others through them, the falsity of his previous statements; . . . In any view, there was a fraud attempted upon the insurers; and it is not lessened because the motive that induced it was something in addition to the possible injury to them that it might work." (*Claflin* v. *Commonwealth Insurance Co., supra,* 110 U.S. at pp. 94-97 [28 L.Ed.2d at p. 82].)

a. *Materiality Is a Function of Prospective Reasonable Relevancy*

*Claflin* holds that the materiality of a statement is not defined and determined by the effect it has on the outcome of the investigation. Rather, a question and answer are material when they relate to the insured's duty to give to the insurer all the information he has as well as other sources of information so that the insurer can make a determination of its obligations.

Thus, materiality is determined by its prospective reasonable relevance to the insurer's inquiry. In *Fine* v. *Bellefonte Underwriters Ins. Co.* (2d Cir. 1984) 725 F.2d 179, 182-184 (citing *Claflin*), the court held that a statement is not material only if it relates to a matter which ultimately proves to be significant in the ultimate disposition of the claim. *Rather, if the misrepresentation concerns a subject reasonably relevant to the insured's investigation, and if a reasonable insurer would attach importance to the fact misrepresented, then it is material.*

b. *Such Materiality May Be Determined as a Matter of Law*

█ Plaintiff argues that whether her misrepresentations are material is a question for the jury. Although it does not appear that any published California opinion has addressed this issue, several federal courts have considered it. These cases deal with policies containing what is rather standard "fraud and concealment" language, similar to the provision at issue in the instant case. They hold materiality is a mixed question of law and fact that can be decided as a matter of law *if* reasonable minds could not disagree on the materiality of the misrepresentations. (*Woods* v. *Independent Fire Ins. Co.* (11th Cir. 1985) 749 F.2d 1493, 1496; *Long* v. *Insurance Co. of North America* (10th Cir. 1982) 670 F.2d 930, 934.)

In the case before us, we are satisfied that reasonable minds could not differ regarding the materiality of plaintiff's misrepresentations. The policy provides that damage which is the result of the insured's intentional acts is not covered and it defines "insured" to include relatives who are permanent members of the policyholder's household. Further, it contains a subrogation provision allowing the insurer an assignment of plaintiff's rights of recovery for loss, to the extent that payment is made by defendant. Thus the facts, concealed by plaintiff, that her son (1) was at home (thus raising the possibility, from the defendant's point of view, that he was living there and thus within the definition of an "insured") and (2) had committed the vandalism, were beyond question reasonably relevant to defendant's investigation and its course of action. This was sufficient to establish materiality.

c. *Plaintiff's Intent to Defraud Was Established*

█ Generally, the issue of whether the insured's false statement was knowingly and intentionally made with knowledge of its falsity and with intent of defrauding the insurer is a question of fact. (*Miller* v. *Fireman's Fund Ins. Co.* (1907) 6 Cal.App. 395, 398 [92 P. 332]; *Kahn* v. *Commercial Union Fire Ins. Co.* (1936) 16 Cal.App.2d 42, 45 [60 P.2d 177]; *Pedrotti* v. *American Nat. Fire Ins. Co., etc.* (1928) 90 Cal.App. 668, 671 [266 P. 376].) In the instant case, however, that issue need not be tried. First, plaintiff admits that she knew she was lying to the defendant and did so with the

intent that defendant not find out the actual facts. Second, under *Claflin,* the intent to defraud the insurer is necessarily implied when the misrepresentation is material and the insured wilfully makes it with knowledge of its falsity. Thus, plaintiff's intent to deceive was established as a matter of law.

This conclusion is in no way avoided by plaintiff's contention that she was motivated to make such false statements by her very reasonable fear of her son. We concur with the view, expressed in *Claflin,* that an insured's ulterior motive in misrepresenting material facts to the insurer is simply irrelevant in determining whether a fraud and concealment provision provides a defense to the insured's claim. In the context of this case, that means that plaintiff's motive of fear of her son's violence was irrelevant to the question of whether she intended to deceive the defendant.

### d. *Plaintiff's Statements Were a Necessary Part of Defendant's Investigation*

 Plaintiff finally argues that defendant already knew the "true facts" of the vandalism when its agent first interviewed her and later when he examined her under oath. Therefore her misrepresentations could not have influenced defendant, i.e., defendant could not have relied on them in its investigation. However, that is not what the record shows.

In its answers to the interrogatories propounded by plaintiff, defendant states that before its investigator interviewed plaintiff, the neighbor, Mr. Wiley, had called defendant and reported that plaintiff's son was at plaintiff's home the day the damage occurred and that objects were broken and much commotion occurred. This information was simply input which caused defendant to hire an investigator to make further inquiries, including the taking of plaintiff's statement. We cannot believe that plaintiff seriously contends that defendant could or should have accepted Mr. Wiley's hearsay information at face value without further investigation, and certainly not without obtaining her side of the story.[8] Only after his interview with plaintiff did the investigator speak personally with Mr. Wiley. Thus, the evidence does not demonstrate that defendant was convinced of the actual facts prior to obtaining plaintiff's recorded statement. The solicitation and receipt of plaintiff's statements were a proper and necessary part of defendant's reasonable investigation of plaintiff's claim which the defendant was required by law to make.

### e. *Summary Resolution Was Proper*

As plaintiff's misrepresentations were material and were intentionally made with knowledge of their falsity and with the intent to deceive defend-

---

[8] Such conduct would have been improper and, most probably, a violation of Insurance Code section 790.03, subdivision (h)(3).

ant, the trial court was correct in ruling that, as a matter of law, they were a defense to the breach of contract causes of action (i.e., the first and fourth counts), since they voided the insurance contract. Summary judgment was therefore proper.

### 2. *Malicious Prosecution*

■ Plaintiff's third cause of action is for malicious prosecution. To recover on this cause of action, plaintiff must show, inter alia, that defendant did not reasonably believe in the validity of the criminal charge which was brought against her. That is, plaintiff must show defendant acted without probable cause. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 699-700, 704, pp. 151-152, 154; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 418, 424-430, pp. 503-504, 508-512.)

■ Probable cause is ". . . an honest suspicion or belief on the part of the instigator [of the prosecution], founded upon facts sufficiently strong to warrant the average person in believing the charge to be true." (*Murdock* v. *Gerth* (1944) 65 Cal.App.2d 170, 178-179 [150 P.2d 489]; accord *Williams* v. *Coombs* (1986) 179 Cal.App.3d 626, 634 [224 Cal.Rptr. 865].) Thus, as *Williams* notes at page 634, probable cause has both a subjective and an objective element. "A private prosecutor can not have probable cause for initiating criminal proceedings against another if he does not believe that the accused was guilty of the crime charged against him. If he does not so believe, it is immaterial that the facts of which he had knowledge or belief were such that reasonable men might have regarded them as proof of the guilt of the accused. It is only when the prosecutor honestly but mistakenly believes the accused to be guilty that the question whether his belief was based on reasonable grounds becomes material." (Rest.2d Torts, § 662, com. c, p. 424; accord, *Williams* v. *Coombs, supra,* at pp. 634-635.)

■ "Resolution of the question of the existence of a triable issue of fact on the question of probable cause requires the isolation of the factual and legal elements of probable cause itself. The trier of fact must resolve any conflict in the evidentiary underpinning of the facts of probable cause. Once that conflict has been resolved, the question of whether the facts as they are found to exist constitute probable cause for bringing the former action is a question of law to be resolved by the judge. [Citations.]" (*Tool Research & Engineering Corp.* v. *Henigson* (1975) 46 Cal.App.3d 675, 682-683 [120 Cal.Rptr. 291].) Here, all of the relevant facts concerning the existence of probable cause are undisputed. There are no material questions about what plaintiff and defendant did and said during the course of the processing of plaintiff's claim and the resultant notification of authorities by defendant. Thus, the trial court was entitled to resolve the question of probable cause, i.e., both the subjective and objective elements. This was an issue of law to

be determined by the court. (*Williams* v. *Coombs, supra,* 179 Cal.App.3d at p. 636.)

 With respect to the subjective element of probable cause, defendant presented evidence (the declaration of defendant's property claims manager) that it had formed an honest belief that plaintiff's misrepresentations constituted a violation of Insurance Code section 556. Plaintiff presented no evidence to controvert that assertion. Thus, the subjective element was established. (*Williams* v. *Coombs, supra,* 179 Cal.App.3d at p. 640.)

As to the objective element, plaintiff contends that the issue of whether there were facts strong enough to warrant the average person's belief that a violation of Insurance Code section 556 had been committed, had already been determined in her favor by the trial court in the criminal action since her Penal Code section 995 motion to dismiss was granted.[9] Thus, concludes plaintiff, the trial court erred in granting summary judgment on her third cause of action.

Defendant challenges this argument. It asserts that (1) neither the trial court in the instant case nor this court has been presented with evidence of that dismissal and (2) even if there was such a dismissal, plaintiff only assumes it was granted for lack of probable cause and not for the other ground set out in Penal Code section 995. Regarding defendant's first point, the record shows that buried in three lines in the points and authorities filed by plaintiff in opposition to the motion for summary judgment is a request for the trial court to take judicial notice of the file in the criminal action. The record does not disclose if judicial notice was taken. As to defendant's second point, plaintiff appears to concede in her reply brief that her section 995 motion may not have been granted on probable cause grounds.[10]

As stated in the above quoted portion of the Restatement, "It is only when the prosecutor honestly but *mistakenly* believes the accused to be guilty that the question whether his belief was based on reasonable grounds becomes material." (Rest.2d Torts, § 662, com. c, p. 424, italics added.) Thus, even assuming that the charges against plaintiff were dismissed for lack of probable cause and, thus, that defendant mistakenly believed plaintiff to be guilty of violating Insurance Code section 556, this court must still

---

[9] Penal Code section 995 states in pertinent part: "(a) . . . the . . . information shall be set aside by the court in which the defendant is arraigned, upon his or her motion, in either of the following cases: . . . (A) That before the filing [of the information] the defendant had not been legally committed by a magistrate. [¶] (B) That the defendant had been committed without reasonable or probable cause."

[10] However, as we explain, our decision does not turn on the presence of such procedural uncertainties. We assume in our resolution of this matter that the section 995 motion was granted and the reason therefor was that the superior court determined that plaintiff had been committed without probable cause.

determine whether that mistaken belief was nonetheless based on reasonable grounds. If it was, no cause of action for malicious prosecution exists.

■ This rule is essentially set out in section 663 of the Restatement. Section 663 states in pertinent part, "(1) In the absence of evidence of probable cause, a discharge of the accused by a magistrate upon a preliminary hearing in the criminal proceeding is conclusive of the lack of probable cause unless it appears that the discharge was [¶] (a) not upon the merits, or [¶] (b) based upon testimony offered by the accused at the hearing, or [¶] (c) due to the misconduct of the magistrate." (Rest.2d Torts, § 663.) Although section 663 speaks of the magistrate discharging the accused rather than the case being dismissed on a Penal Code section 995 motion after the accused has been bound over, there appears to be no reason for not applying section 663 to the instant case. The point of the section is to set out guidelines for a malicious prosecution action when the court in the criminal proceeding determined probable cause was lacking.

We note that section 663 begins "In the absence of evidence of probable cause . . . ." This phrase allows the defendant accused of malicious prosecution to present evidence of probable cause in spite of the prior discharge of the criminal action. (Rest.2d Torts, § 663, com. c., p. 430.) As comment c to section 663 states, ". . . it is the function of the court [hearing the action for malicious prosecution] to determine whether the accuser had probable cause for initiating the proceedings, and not merely to determine whether the magistrate erred in dismissing the charge."

■ Applying these rules to the instant case, we have no trouble concluding, as a matter of law, that defendant had probable cause to report plaintiff to the police for a violation of Insurance Code section 556. ■ The gist of the crime set out in section 556 is the intent to defraud. (*People* v. *Panagoit* (1914) 25 Cal.App. 158, 162 [143 P. 70] [construing former Pen. Code, § 549, from which Ins. Code, § 556 was derived]; *People* v. *Scofield* (1971) 17 Cal.App.3d 1018, 1025 [95 Cal.Rptr. 405].) "One who wilfully submits a claim, knowing it to be false, necessarily does so with intent to defraud. [Citation.]" (*Scofield, supra,* at p. 1026.) ■ "Since there is no dispute concerning the existence of the facts relied to establish probable cause, the question of whether those facts objectively amount to probable cause is a question of law for the court." (*Williams* v. *Coombs, supra,* 179 Cal.App.3d at p. 640.) **(10c)** The facts are that plaintiff made material misrepresentaions to defendant's agents as they pursued their investigation and that she made them knowingly and with intent to deceive defendant. These facts are "sufficiently strong to warrant the average person in believing the charge to be true." (*Murdock* v. *Gerth, supra,* 65 Cal.App.2d at pp. 178-179; accord *Williams, supra,* at p. 634.)

Thus, both the subjective and objective elements of probable cause were established by defendant in its motion for summary judgment. As plaintiff could not establish the "lack of probable cause" element of her cause of action for malicious prosecution, the trial court's summary judgment on that cause of action must be affirmed.

### 3. False Imprisonment

Plaintiff's second cause of action is for false imprisonment. It is based upon her arrest for violation of Insurance Code section 556. False arrest is one form of false imprisonment. (5 Witkin, Summary of Cal. Law, *supra*, Torts, § 378 at pp. 463-464.)

 False imprisonment and malicious prosecution are mutually inconsistent torts and only one, if either, will lie in this case. In a malicious criminal prosecution, the detention was malicious but it was accomplished properly, i.e., by means of a procedurally valid arrest. In contrast, if the plaintiff is arrested pursuant to a procedurally improper warrant or warrantless arrest, the remedy is a cause of action for false imprisonment. (*Collins* v. *City and County of San Francisco* (1975) 50 Cal.App.3d 671, 676-677 [123 Cal.Rptr. 525].)

 Plaintiff's complaint alleges that based on a biased and incorrect report given by defendant to the authorities, she was arrested. She alleges defendant maliciously gave them the report so that she would be arrested and defendant would not have to pay on her claim. Plaintiff does not allege she was *falsely* arrested, i.e., arrested without proper warrant or other legal authority. However, assuming that plaintiff's cause of action for false imprisonment had been properly pleaded, defendant presented evidence sufficient to defeat that cause of action and plaintiff did not present evidence to raise a triable issue of material fact on the issue.

"A private person does not become liable for false imprisonment when in good faith he gives information—even mistaken information—to the proper authorities though such information may be the principal cause of plaintiff's imprisonment. [Citations.]" (*Peterson* v. *Robison* (1954) 43 Cal.2d 690, 695 [277 P.2d 19]; accord *Turner* v. *Mellon* (1953) 41 Cal.2d 45, 48 [257 P.2d 15]; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 401 at p. 482.) As discussed above, this record clearly reflects that, based on plaintiff's misrepresentations, defendant formulated an honest belief that plaintiff had violated Insurance Code section 556. Therefore, summary judgment in favor of defendant was proper on the cause of action for false imprisonment.

### 4. Intentional Infliction of Emotional Distress

Plaintiff's fifth cause of action is for intentional infliction of emotional distress. The complaint states it is based on "the wrongful acts of defend-

ants . . . as alleged above [in the first through fourth causes of action] . . . ." As plaintiff based her distress cause of action on acts of defendant which we have already determined to be proper, we might summarily conclude that judgment in favor of defendant on this cause of action was likewise proper. (*Williams* v. *Taylor* (1982) 129 Cal.App.3d 745, 756 [181 Cal.Rptr. 423].) However, unlike in *Williams,* the plaintiff here has not conceded that the emotional distress cause of action was dependent on the viability of the underlying claim for malicious prosecution. Thus, we address directly the merits of her claim.

■ Intentional infliction of emotional distress involves a defendant who acts with the intent of causing emotional distress or acts with reckless disregard of the probability of causing emotional distress. (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) ■ Here, the parties do not disagree on the steps which defendant took in denying plaintiff's claim and referring her to the criminal authorities. The evidence presented does not raise any triable issue as to the requisite intent for a cause of action for intentional infliction of emotional distress. ■ The fact that defendant's acts did cause plaintiff emotional distress is not sufficient to prove *intentional* infliction of emotional distress. (*Id.,* at p. 395.) ■ Defendant had the right to deny plaintiff's claim and report her to the authorities. Plaintiff's evidence does not show defendant performed these acts in an impermissible manner. (*Ibid.*) Thus, as a matter of law, defendant did not act with the intent to inflict emotional distress upon the plaintiff. Therefore, summary judgment on this cause of action was proper. As we can determine the propriety of that judgment on this basis, it is unnecessary to discuss the parties' contentions regarding the statute of limitations.

## DISPOSITION

The summary judgment is affirmed. Costs on appeal to defendant.

Klein, P. J., and Danielson, J., concurred.