**Wendy MORRIS and Russell A. Morris, Sr., Plaintiffs,**

**v.**

**ALLSTATE INSURANCE COMPANY, Defendants.**

**No. ED CV 13–00778 ABC (OPx).**

United States District Court, C.D. California, Western Division.

Signed April 28, 2014.

Robert P. Karwin, The Law Offices of Robert P. Karwin, Sun City, CA, for Plaintiffs.

Peter H. Klee, Sheppard Mullin Richter and Hampton LLP, San Diego, CA, Theona Zhordania, Sheppard Mullin Richter and Hampton LLP, Los Angeles, CA, for Defendants.

## ORDER *GRANTING* MOTION FOR SUMMARY JUDGMENT

AUDREY B. COLLINS, District Judge.

Pending before the Court is Defendant Allstate Insurance Company's ("Defendant") Motion for Summary Judgment ("Motion," docket no. 25) filed on February 27, 2014. Plaintiffs Wendy Morris and Russell A. Morris, Sr. ("Plaintiffs") filed an Opposition and Defendant filed a Reply. Oral argument was heard on April 28, 2014. For the following reasons, the Court **GRANTS** the Motion.

## I. BACKGROUND

Plaintiffs are suing their insurer, Defendant, for breach of contract and breach of the implied covenant of good faith and fair dealing on the ground that Defendant improperly denied Plaintiffs' insurance claim. Defendant moves for summary judgment.

## II. UNDISPUTED FACTS

The following facts are material and undisputed [1]:

1. Plaintiffs insured their property under (1) an Allstate homeowners' policy (the "Allstate policy") and (2) a flood insurance policy issued by the federal government. DSUF 1.

2. As relevant to this action, Coverage C—Personal Property Protection of the Allstate policy covers damage to personal property caused by specific named perils. DSUF 2.

3. The named peril in issue in this case is "windstorm." Def.'s Exh. 1 p. 51.

4. The Allstate policy includes a Flood Exclusion such that the policy does not cover loss to personal property caused by "Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind." DSUF 3.

5. The Allstate policy includes a Weather Conditions exclusion such that the policy does not cover loss to personal property caused by "Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss." DSUF 7.

6. The Allstate policy does not cover loss to personal property when: (a) there are two or more causes of loss to the covered property; and (b) the predominant cause(s) of loss is (are) excluded under Losses We Do Not Cover. DSUF 8.

7. The Allstate policy provides: "We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." DSUF 9.

8. The Allstate policy provides, "We do not cover loss to personal property . . . caused by . . . [t]he failure of any insured person to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss we cover." Def.'s Exh. 1, p. 28–29.

9. On July 6, 2011, a storm hit Plaintiffs' neighborhood. Plaintiffs described the storm as having lasted approximately two hours. Plaintiffs claimed that the storm flooded their property and the street with 5 1/2 inches of rain, and produced heavy winds. PSUF 2–5; Def.'s Exh. 11; Def.'s Exh. 25, 66:3–22, 97:9–98:1.

10. Mrs. Morris stated that the day before and the day of the storm, she, with the help of two neighborhood boys, moved some 500 items of personal property from the house outside to the covered porch/portico of the house. Much of this property consisted of clothing or items to be used in connection with upcoming wed-

1. The undisputed material facts are taken from Defendant's Statement of Undisputed Facts ("DSUF") and Plaintiffs' Statement of Undisputed Facts ("PSUF"). Although Plaintiffs' SUF references certain photographs in Exhibit 2, Plaintiffs failed to submit that exhibit. Plaintiffs' SUF also refers to deposition excerpts but Plaintiffs did not include all of the referenced pages. The Court need not consider the facts that this missing evidence allegedly supports. In addition, proposed facts not included in the statement herein are not material. Finally, although the parties purport to dispute some of these facts, the material facts included herein are not genuinely disputed.

dings. PSUF 6, 7, 8, 16, 18; Def.'s Exh. 12, p. 120; Def.'s 23, 22:10–23:11.

11. Plaintiffs claim that this property was damaged in the storm by wind, rain, mud, and dirt. Mrs. Morris stated that wind blew the property out from under the cover of the portico and into the street and mud, thereby damaging the property. PSUF 11; Def.'s Response to PSUF 11; Def.'s Exh. 23, 22:10–23:11(EUO); Def.'s Exh. 39, 22:10–23:11 (describing numerous items as damaged because they are wet, muddy, dirty); Def.'s Exh. 12, p. 120.

12. Mrs. Morris subsequently testified at deposition that all of these damaged items had been in the uncovered driveway of their home before the storm. *See* Def.'s Exh. 39, 220:15–223:7.

13. After the storm, Mrs. Morris gathered most of the damaged items in trash cans and discarded them at a landfill. PSUF 17, 18, 38.

14. Mrs. Morris stated that an unnamed Allstate agent told her to dispose of these items and not take photographs of them. Def.'s Exh. 23, 63:3–11, 67:2–13, 71:8–25; Def.'s Exh. 38, 185:11–186:12.

15. The record before the Court contains two dump receipts: one dated 6/23/2011, and another dated 08/11/2011. *See* Def.'s Exhs. 37, 43, 44.

16. On or about July 6, 2011, Plaintiffs submitted a flood damage claim to the federal government. DSUF 10.

17. The claim file for Plaintiffs' flood loss reports that they disclosed the following:

"Loss Facts: Ins[ured] stated that there was a rainstorm in the area—no interior w[ater] d[amage] to the home—only the front porch has w[ater] damage. Per Ms. Morris a flash flood occurred and flooded personal property in the patio area of her home. She had moved items out of the home because of a wedding scheduled for this Saturday. Mrs. Morris stated the water flooded the street and her property and part of her garage. Summary of conversation damages: Heavy rainstorm yesterday caused flooding to streets, insured's property and neighbors. Loss due to a GCF resulting from a rapid accumulation of rainfall which caused street flooding as well as minor flooding to insured's and other properties on street. No exterior or interior flood lines. Insured stated only damage was to personal property items." DSUF 11.

18. Plaintiffs concede that flood and/or rain damaged their personal property. DSUF 12.

19. Plaintiffs' flood claim was denied because all of the allegedly damaged personal property was located outside of their house. DSUF 13.

20. On or about July 7, 2011, Mrs. Morris submitted a claim to Defendant, contending that a windstorm had damaged her personal property. DSUF 14.

21. Defendant advised Mrs. Morris to submit a list of items that had been damaged by the windstorm. DSUF 15.

22. On or about August 17, 2011, Plaintiffs provided Defendant with a list of personal property that was allegedly damaged by the windstorm. DSUF 16.

23. On or about August 24, 2011, Mrs. Morris provided Defendant with pictures allegedly taken on the date of loss. DSUF 17.

24. On or about August 30, 2011, Defendant inspected the damaged property that Plaintiffs had not discarded. DSUF 18.

25. Based on this inspection and its review of the pictures Plaintiffs had previously provided, Defendant concluded that (1) some of the property was damaged by water; (2) some was dusty or dirty and could be cleaned; (3) some had no apparent damage; and (4) for some, the cause of damage was unclear. DSUF 19.

26. Due to questions regarding the cause and extent of the loss, Defendant retained independent counsel to take Plaintiffs' examinations under oath ("EUO") and advise the company regarding its coverage obligations. DSUF 20.

27. On September 29, 2011, Defendant took Plaintiffs' EUOs. DSUF 21.

28. During her EUO, Ms. Morris testified that (1) on the date of loss (July 6, 2011), she had moved items of personal property onto her driveway because she was preparing for a wedding; (2) two young boys from the "neighborhood," who were acquaintances of her daughter, helped her move the property to the driveway; (3) after she collected the allegedly damaged property, an unidentified Allstate employee told her to "throw everything away and to not take photographs"; and (4) a photograph of a couch allegedly damaged by the windstorm, which bore a date stamp of March 7, 2007, was taken on the date of loss (i.e., July 6, 2011). DSUF 22.

29. Based on its investigation, Defendant concluded that Plaintiffs did not prove that their damage was covered by the policy, and that some policy exclusions applied. As a result, Defendant denied the claim. DSUF 27; Def.'s Exh. 36.

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party satisfies its initial burden, the adverse party must set forth specific facts showing that there is a genuine issue for trial. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir.2003) ("[The non-moving party] can defeat summary judgment by demonstrating the evidence, taken as a whole, could lead a rational trier of fact to find in its favor.") (citations omitted).

Both the moving party and the adverse party must support their factual positions by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot product admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

An issue of fact is genuine if it reasonably can be resolved in favor of either party. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir.1992). Rather, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176

(1962). However, the court must view the evidence presented "through the prism of the substantive evidentiary burden." *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505.

But "mere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford,* 877 F.2d 728, 731 (9th Cir.1989). The "existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. The "opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. DISCUSSION

Defendants move for summary judgment on several grounds.

### A. Defendant is Entitled to Summary Judgment Because Plaintiffs Misrepresented and Concealed Material Facts when Pursuing their Claim.

■ The Allstate policy contains a provision stating "We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." FACT 9. Furthermore, California law provides that an insurer may deny a claim or void a policy if a insured knowingly, intentionally, and with the intent to defraud misrepresents or conceals a material fact during the presentation of the insurance claim. *Cummings v. Fire Ins. Exch.,* 202 Cal.App.3d 1407, 1417, 249 Cal.Rptr. 568 (1988) (af-

firming summary judgment for insurer because insured made material misrepresentations during presentation of claim). "[M]ateriality is determined by its prospective reasonable relevance to the insurer's inquiry." *Id.* Thus, a misrepresentation is material if it "concerns a subject reasonably relevant to the insured's investigation, and if a reasonable insurer would attach importance to the fact misrepresented." *Id.* Furthermore, intent to defraud the insurer is necessarily implied when the misrepresentation is material and the insured wilfully makes it with knowledge of its falsity. *Id.* at 1418, 249 Cal.Rptr. 568.

■ Plaintiffs made several material misrepresentations that entitled Defendant to deny their claim. First, it is undisputed that Mrs. Morris told Defendant both in her initial report of the claim and during her investigation under oath that the damaged personal property was stored under and covered by a portico. FACTS 10, 11. However, Plaintiffs later admitted in discovery that all of the damaged items were in fact located on their uncovered driveway when the storm hit. FACT 12. Where the property was located was material to Defendant's determination of what caused the damage (wind or rain), and to the policy condition requiring policyholders to take reasonable steps to protect their property. FACT 8. It is difficult to imagine that such a misrepresentation could be an honest mistake, and Plaintiffs entirely fail to address or explain it in their Opposition, in effect conceding that they wilfully made the representation knowing it was false.[2] Thus, in light of the crucial nature of this fact to Defendant's claim investigation, the advantage Plaintiffs stood to gain from stating that the property was covered

---

**2.** Plaintiffs' silence is especially telling because they did attempt to explain why *other* alleged misrepresentations were either not misrepresentations or were, at most, honest mistakes.

and thus sheltered from the rain until the wind blew it into the open (*see* Pl.'s Exh. 1, 49:2–9), the clear contradiction in Plaintiffs' statements, and Plaintiffs' total failure to account for it, the Court finds that the only inference that can be made is that Plaintiffs made this misrepresentation wilfully and with the intent to defraud. Plaintiffs have not pointed to any evidence making this a triable issue of fact.

■ Plaintiffs also made a material misrepresentation concerning their disposal of the damaged property. Plaintiffs' account of their disposal of the property is hard to decipher in several respects. Mrs. Morris testified both that she disposed of the damaged property immediately or very shortly after the storm, but also that she waited until it got stinky, about a week after the storm. *See* Def.'s Exh. 38, 123:5–15. Mrs. Morris also stated that on the day of the storm, an unnamed Allstate employee told her to dispose of the property without taking photos of it, and that another unnamed Allstate employee said the same thing a week later. FACT 14, Def.'s Exh. 38, 123:5–15. However, none of Defendant's logs reflecting numerous communications between Defendants and Plaintiffs reflect that anyone gave Plaintiffs this unlikely instruction.

Defendant's investigators asked to view the property shortly after the storm, but Mrs. Morris stated much of it was already disposed of. However, the record reflects that Plaintiffs submitted two dump receipts to Defendant: one dated 6/23/2011, which is two weeks before the storm, and another dated 08/11/2011, which is more than a month after the storm. FACT 15. Plaintiffs have not pointed to any receipt for a dump within the time-frame (up to a week or two after the storm) in which, according to Mrs. Morris's testimony, Plaintiffs likely dumped the property.

In any event, Defendant's Motion focuses on the misrepresentation inherent in Plaintiffs' submission of the 06/23/2011 dump receipt: Plaintiffs submitted it to substantiate their assertion that they disposed of the property damaged in the July 6 storm before Defendant could inspect it and at Defendant's employee's instruction, but obviously a dump receipt pre-dating the storm could not have been for property damaged by the storm. This misrepresentation was material in that Plaintiffs relied on the receipt to justify and prove up their disposal of property and reliance on Defendant's employee, even though this 06/23/2011 receipt could not have been for any property taken to a dump after the July 6, 2011 storm. Alternatively, to the extent Plaintiffs' claim included property that they already disposed of on 06/23/2011, that is also clearly a material misrepresentation. As with the question of where the property was located when the storm hit, Plaintiffs wholly fail to address their misrepresentation concerning the property dump, in effect conceding they made this misrepresentation wilfully and with the intend to defraud.

Although Defendant points to other misrepresentations, the Court need not reach them, as the two misrepresentations discussed herein entitled Defendant to deny Plaintiffs' insurance claim under the terms of the insurance contract and California law. Defendants are therefore entitled to summary judgment on the entirety of Plaintiffs' complaint.

**B. Defendant is Entitled To Summary Judgment Because Plaintiffs did not Prove that the Damage Was Caused by a Named Peril, and Because Policy Exclusions Apply.**

■ Under a "named perils" policy like Plaintiffs' personal property policy, the insured has the burden of proving that the

loss was caused by a specifically enumerated peril. *Strubble v. United Services Auto. Assn.*, 35 Cal.App.3d 498, 504, 110 Cal.Rptr. 828 (1973); *Central Nat. Ins. Co. v. Superior Court*, 2 Cal.App.4th 926, 932, 3 Cal.Rptr.2d 622 (1992); Hon. Croskey, et al., *California Practice Guide: Insurance Litigation* § 6:253.2 (The Rutter Group 2013). Plaintiffs claimed that their property was damaged by a "windstorm," and thus had to prove that the alleged damage to their personal property was caused by windstorm.

Because the Allstate policy does not define the term "windstorm," the Court will ascertain its meaning by reference to a dictionary. *Scott v. Cont'l Ins. Co.*, 44 Cal.App.4th 24, 29, 51 Cal.Rptr.2d 566 (1996) ("[i]n seeking to ascertain the ordinary sense of words, courts in insurance cases regularly turn to general dictionaries"). Dictionaries define the term "windstorm" as a storm with high winds or violent gusts with little or no rain. *See* http://www.thefreedictionary.com/windstorm (collecting dictionary definitions of "windstorm" as follows: "a storm with high winds but little or no rain," American Heritage Dictionary; "a storm consisting of violent winds," Collins English Dictionary; "a storm with heavy wind but little or no precipitation," Webster's College Dictionary; a "storm with high winds or violent gusts but little or no rain," American Heritage Science Dictio-

nary). Plaintiffs have not presented any evidence tending to show that "windstorm" can reasonably mean anything but a storm with high winds and little to no rain.

During the claim investigation, Plaintiffs repeatedly stated that the July 6, 2011 weather event dropped significant rain on their property (5 1/2 inches), enough to flood their property and the adjacent street. FACT 9. When Defendant stated to Mrs. Morris at her deposition that its research suggested that less than a tenth of an inch fell in her vicinity that day, Mrs. Morris insisted otherwise. *See* Def.'s Exh. 25, 97:9–98:1. In light of the foregoing admissions that the storm produced significant rain—enough to cause a flood—Plaintiffs did not demonstrate that the event that caused their damage was a "windstorm," the covered peril they invoked for their claim. Defendant is therefore entitled to summary judgment on this basis.[3]

Defendant is also entitled to judgment based on the policy's Flood and Weather Conditions Exclusions. The Flood Exclusion excludes from coverage damage to personal property "caused by or consisting of . . . Flood, including but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind." FACT 4. California

---

3. At oral argument, Plaintiffs argued that because Defendant paid their claim for a gate also damaged in the July 6, 2011 storm, that shows there was enough wind to raise a triable issue that the storm was a "windstorm." This is not persuasive. In California, "[i]nterpretation of a contract is solely a question of law unless the interpretation turns upon the credibility of extrinsic evidence." *Badie v. Bank of Am.*, 67 Cal.App.4th 779, 799, 79 Cal.Rptr.2d 273 (1998). Here, there are no such credibility issues. Accordingly, interpreting the contract is a legal question, and

applying the dictionary meaning to the ordinary word "windstorm" is wholly appropriate. In addition, Defendant paid for the damaged gate under a different insurance coverage—an appurtenant structures coverage—that insured Plaintiffs' property against all risks. This coverage had a different scope, with different exclusions and burdens from the personal property coverage in issue here. Thus, nothing about Plaintiffs' claim for their damaged gate is relevant to their personal property claim.

courts have defined "surface water" to include water derived from rain. *See, e.g., Mogle v. Moore*, 16 Cal.2d 1, 8, 104 P.2d 785 (1940) ("Surface waters are defined as waters falling upon and naturally spreading over the lands. They may come from seasonal rains."). The Weather Conditions exclusion excludes from coverage damage caused by "Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss." FACT 5.

In an attempt to show that their property was damaged by wind [4], Plaintiffs asserted that the wind blew their property into the muddy flooded street, thereby damaging the property. FACT 11. Mrs. Morris also admitted that all of their property was damaged by rain. FACT 18. This stands to reason because she also admitted that all of the property was located on her uncovered driveway, FACT 12, so it was exposed to the weather without protection.

All of the forgoing admissions demonstrate that the damage to Plaintiffs' property was either (1) caused by rain alone, which is not a covered peril, or (2) was caused by wind (a "weather condition") that blew the property into the mud created by the flood or surface waters, thereby triggering the Flood and Weather Conditions Exclusions. Because there is no triable issue of fact as to whether these exclusions applied to Plaintiffs' insurance claim, Defendant was entitled to deny their claim and is now entitled to summary judgment.[5]

Because Plaintiffs did not meet their burden of demonstrating that their losses were caused by a windstorm (the covered peril upon which they based their insurance claim), and because the Flood and Weather Conditions Exclusions applied to their claim, Defendant is entitled to summary judgment as to the entirety of Plaintiff's complaint.

The Court finds it unnecessary to reach the other bases of Defendant's Motion.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment in its entirety. Defendant is **ORDERED** to file a Proposed Order within ten (10) days of the issuance of this Order.

**IT IS SO ORDERED.**

---

**4.** Even if the property was damaged by "wind" alone, that would not appear to trigger coverage because the covered peril is "wind *storm*," not just "wind".

**5.** At oral argument, Plaintiffs argued that a table and a flower girl basket were clearly damaged by wind and not by rain: the table was toppled over by the wind and broke, and the basket, which was wrapped in cellophane, had damage to its handle, presumably from being blown over by wind. (Photos of these items were in Plaintiffs' exhibit 2, which was not filed. At oral argument, Plaintiffs stated that Defendant's exhibits included these photos, but counsel did not identify which pages among Defendant's voluminous exhibits reflected these photos.) However, again, that there was wind does not mean there was a "windstorm," the peril covered by Plaintiffs' policy. In addition, Defendant notes that the value of these items together was about $400, which is less than the policy's $1,000 deductible. *See Reply* 10:6–11. Thus, even if Plaintiffs had met their burden of demonstrating that these items were damaged in a windstorm and that no exclusion applied, they would not have been compensated anyway.