972 F.2d 1342
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jim SICILIA, Plaintiff-counter-claim-defendant--Appellee,
v.
SAFECO INSURANCE COMPANY OF AMERICA,
Defendant-counter-claimant--Appellant.
Jim SICILIA, Plaintiff-counter-claim-defendant--Appellant,
v.
SAFECO INSURANCE COMPANY OF AMERICA,
Defendant-counter-claimant--Appellee.
Jim SICILIA, Plaintiff-counter-claim-defendant--Appellant,
v.
SAFECO INSURANCE COMPANY OF AMERICA,
Defendant-counter-claimant--Appellee.
Jim SICILIA, Plaintiff-counter-claim-defendant--Appellee,
v.
SAFECO INSURANCE COMPANY OF AMERICA,
Defendant-counter-claimant--Appellant.
 Nos. 89-56096, 89-56169, 89-56195 and 90-55489.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 9, 1992.
Decided July 23, 1992.
 
 1
 Before FARRIS, WIGGINS and FERNANDEZ, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Jim Sicilia and Safeco Insurance Company of America (Safeco) appeal the judgments in Sicilia's actions against Safeco. Two buildings owned by Sicilia and insured by Safeco were destroyed by separate fires. Sicilia brought two actions against Safeco for alleged misconduct in its handling of the two insurance claims. Safeco counterclaimed, alleging arson, misrepresentation, concealment, and fraud. After a jury trial the district court entered judgment for Sicilia on the claim from the first fire and entered judgment for Safeco on the claim from the second fire. We affirm.
 
 BACKGROUND
 
 4
 Sicilia was the sole shareholder of World Wide Video, a corporation that owned video retail stores and manufactured sexually explicit video tapes. World Wide Video maintained offices, a warehouse, and a manufacturing operation at 7505 Foothill Boulevard in Tujunga, California. In October of 1983 Sicilia applied for insurance coverage for the Foothill premises through agent Kathy Miotke of the Fred S. James insurance agency in Spokane, Washington. Miotke spoke with Safeco underwriters who expressed interest in writing a policy for Sicilia.
 
 
 5
 Safeco conducted a loss control inspection of Sicilia's premises and subsequently issued a policy which became effective October 10, 1983. The limits of liability for property damage were $252,000 for the building, $100,000 for personal property of the insured, and $650,000 for stock.
 
 
 6
 Before issuing the policy Safeco did not ask Sicilia whether any of his inventory consisted of obscene materials, nor did it ask if Sicilia was engaged in copyright violations. A corporation owned by Sicilia had pleaded no contest to a misdemeanor obscenity charge in 1981. In 1985, while the policy was in effect, Sicilia and World Wide Video were sued for copyright infringement; a stipulated judgment in 1986 enjoined them from violating the plaintiffs' copyright. In 1986, World Wide Video of Tennessee, Inc., also owned by Sicilia, was convicted of possessing obscene material with the intent to distribute and was fined $50,000.
 
 
 7
 In March of 1984, Safeco conducted another loss control inspection of Sicilia's premises. The inspector viewed the inventory and equipment and found the risk acceptable for the coverage requested. The inspector reported that the inventory consisted of "hard core sexually explicit materials." Safeco renewed Sicilia's policy on October 10, 1984.
 
 
 8
 On March 21, 1985, a fire destroyed the World Wide Video premises at 7505 Foothill (the "first fire" or the "Foothill fire"). After the fire, Sicilia submitted a computerized list of his inventory at the time of the fire. Sicilia reported a loss of $900,000 in inventory. Safeco advanced $250,000 to Sicilia on March 29, 1985 under the "stock" portion of the policy. Safeco also accepted a bid of $90,007.59 for repairs to the building and agreed to advance approximately $72,000 in construction costs. In June of 1985, Safeco paid Sicilia another $250,000 under the "stock" portion of the policy.
 
 
 9
 An arson investigator hired by Safeco concluded that the fire was accidentally ignited by a water heater in close proximity to some cardboard boxes. The arson investigator for the Los Angeles Fire Department, John Kitchens, reached a different conclusion. He reported that the fire was an arson fire caused by someone pouring flammable liquids through vents in the building. Kitchens stated that Sicilia did not have a motive to set the fire, which could have been started by anti-pornography groups, feminists, or competitors.
 
 
 10
 Ron Oshiro, a CPA hired by Safeco, stated in a loss report on May 28, 1985 that the amount claimed for lost inventory for the Foothill fire appeared reasonable, assuming the physical quantities were correct. Oshiro called Safeco's attention to the fact that Sicilia's 1983 financial statement valued his year-end inventory at $51,600. Oshiro submitted another report to Safeco on August 21, 1985 which said that he was unable to prove or disprove the amount of the claim. Giselle Niva, the Safeco adjuster working on Sicilia's claims, informed her supervisor on August 23, 1985 that she could verify the quantity of stock and recommended payment of the claim. Niva also recommended that Safeco pay the balance of the construction costs and the office contents claim.
 
 
 11
 After the first fire, Sicilia temporarily relocated his business to 7011 Sunset Boulevard, Los Angeles, California. Those premises were destroyed by fire on May 13, 1985 (the "second fire" or "Sunset fire"). Safeco's arson investigator, Raymond Campuzano, reported that he was unable to determine the cause of the fire. The Los Angeles Fire Department subsequently concluded that the fire was caused by arson and that it was set by a person who gained access with a key. Campuzano later stated in a second report that the fire was "suspicious" and finally concluded that the fire was arson.
 
 
 12
 Safeco employed a salvage company to do an inventory of the items destroyed in the second fire. This inventory documented a total loss of $427,000. Sicilia later submitted a supplemental list of items destroyed in the fire. Sicilia's claim for the second fire was $528,280.16 for stock and $100,000 for contents.
 
 
 13
 In July of 1985, after receiving the Los Angeles Fire Department's report on the second fire, Safeco decided to stop all further payments on Sicilia's claims. Safeco examined Sicilia under oath in September, 1985. At Safeco's request, Sicilia produced numerous documents and receipts. Some of these receipts were for equipment totalling more than $50,000 that was allegedly purchased between the first and second fires. The sellers of the equipment had no entries in their sales ledgers that corresponded to Sicilia's receipts. One of the receipts bore the signature of an employee of the seller who did not work for the seller on the date of the alleged sale.
 
 
 14
 In November of 1985, Sicilia asked for an explanation of why his claims had not been paid. Safeco said that it was continuing to investigate. Sicilia filed suit against Safeco in state court on March 19, 1986 based upon Safeco's alleged bad faith in failing to pay Sicilia's claim for the first fire (the "first action"). Sicilia filed another action (the "second action") in state court on April 23, 1986 based upon Safeco's refusal to pay claims resulting from the second fire. Until Sicilia filed these actions, Safeco neither denied Sicilia's claims, informed him that he was suspected of fraud, nor rescinded the insurance policy.
 
 
 15
 Safeco removed both actions to federal court and the two cases were tried together before a jury. The jury was given a "special verdict" form with twenty-nine questions. The first four questions asked if Sicilia had concealed or misrepresented a material fact in connection with his insurance claims for either fire. The verdict form instructed the jury to sign and return the verdict if the jury answered yes to any of the first four questions. Of these questions the jury answered "yes" only to question four, finding that Sicilia "knowingly or wilfully misrepresented a material fact or circumstance in relation to his claim for the May 13, 1985 fire." Contrary to the instructions on the verdict form, however, the jury did not return the verdict at that point but proceeded to respond to the remaining questions.
 
 
 16
 The jury found that neither Sicilia nor anyone acting on his behalf and at his request intentionally set either fire. The jury found that Sicilia had violated copyright laws but had not failed to inform Safeco of copyright infringement in his application for insurance. According to the jury, Sicilia performed all of his obligations under the insurance policy but Safeco did not perform its obligations. In particular, the jury found that Safeco failed to act promptly upon inquiries about claims and failed to promptly provide a reasonable explanation for the basis of the denial of a claim. The jury awarded Sicilia damages for the first fire equivalent to his claimed losses from the first fire up to the policy limits of the insurance contract.
 
 
 17
 The district court entered judgment for Sicilia in the first action and ordered Safeco to pay damages of $287,933.03 plus prejudgment interest. The court entered judgment in favor of Safeco in the second action and awarded Safeco its costs.
 
 DISCUSSION
 
 18
 The district court denied Safeco's motions for a directed verdict and for judgment notwithstanding the verdict. Safeco argues that the district court should have disregarded the portion of the special verdict in which the jury awarded damages to Sicilia for the first fire. Safeco maintains that once the jury found that Sicilia misrepresented his losses from the second fire, the insurance policy was void as to both fires. Safeco also argues that the evidence does not support the jury's verdict in favor of Sicilia. Safeco and Sicilia raise numerous other claims.
 
 A. Validity of the Special Verdict
 
 19
 The jury ignored the district court's instructions when it awarded damages to Sicilia for the first fire despite Sicilia's misrepresentations in connection with his claim for the second fire. Safeco argues that the court was therefore obliged to ignore the jury's award of damages.
 
 
 20
 Safeco relies upon Floyd v. Laws, 929 F.2d 1390 (9th Cir.1991). In that case the jury found that the plaintiff was not damaged by the defendant's actions, but the jury then disregarded the instructions on the special verdict form and proceeded to award the plaintiff $7,500. Id. at 1392-93. We ruled that "the trial court was bound by law to disregard [the award of damages] as surplusage." Id. at 1399. The jury's finding of no damage "disposed of the legal issue before the trial court and obviated the need for any further finding of fact." Id.
 
 
 21
 In this case the instructions on the special verdict form reflected the theory that Sicilia was not entitled to recover for either the first or the second fire if he misrepresented a material fact in connection with either claim. As demonstrated below, this theory was not correct. The jury seemed to perceive that and thus filled in an award of damages for the first fire. Thus the verdict was not at all inconsistent, and was easily reconcilable. See id. at 1396-97. Floyd requires deference to the instructions on special verdict forms only when " 'the district court has correctly found that the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues....' " 929 F.2d at 1398 (quoting White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir.1987) (emphasis omitted)). Because as it turned out the jury's affirmative response to question four did not render its subsequent answers superfluous, Floyd does not require this court to disregard those answers.
 
 B. Effect of Sicilia's Misrepresentations
 
 22
 The central question on appeal is the effect of Sicilia's false claim for the second fire. Safeco argues that once Sicilia misrepresented a material fact in connection with his claim for the second fire, the policy was void and there could be no recovery for either fire. The relevant policy provision states: "This policy is void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance."
 
 
 23
 As a preliminary matter, Sicilia argues that this provision is ambiguous and should only be applied to misrepresentations in an application for insurance as opposed to an insurance claim. Sicilia relies upon the difference between this provision and the parallel provision in California Insurance Code § 2071, California's statutory fire insurance contract. Section 2071 provides that "[t]his entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance...." Cal.Ins.Code § 2071 (emphasis added). Because Safeco did not include the terms "before or after a loss," Sicilia argues that the misrepresentation provision in his policy is ambiguous. See North River Ins. Co. v. Good Morning Farms, Inc., 105 A.D.2d 1095, 482 N.Y.S.2d 163, 164 (N.Y.App.Div.1984) (court concluded that identical fraud provision applied only to fraud in the inducement); Wendel v. State Farm Fire & Cas. Co., 435 So.2d 284, 285 (Fla.Dist.Ct.App.1983) (same), review denied, 447 So.2d 888 (Fla.1984). But see American Employers' Ins. Co. v. Taylor, 476 So.2d 281, 283 (Fla.Dist.Ct.App.1985) (court held that identical provision was not ambiguous and applied to misrepresentations made after loss), cause dismissed, 485 So.2d 426 (Fla.1985); Astoria Quality Drugs, Inc. v. United Pac. Ins. Co., 163 A.D.2d 82, 557 N.Y.S.2d 339, 340 (N.Y.App.Div.1990) (fraud provision applied to misrepresentations made after loss).
 
 
 24
 Whether an ambiguity exists in an insurance policy is a question of law. Franceschi v. American Motorists Ins. Co., 852 F.2d 1217, 1219 (9th Cir.1988). "A policy provision is ambiguous when it is capable of two or more different constructions, both of which are reasonable." Delgado v. Heritage Life Ins. Co., 157 Cal.App.3d 262, 271, 203 Cal.Rptr. 672 (1984) (citation omitted). The fraud provision in Sicilia's policy is not ambiguous. It clearly states that "any" material misrepresentation or concealment relating to the insurance will void the policy. As the court stated in American Employers' Ins. Co., "any means any." 476 So.2d at 283. By its terms the provision is not limited to fraud in the inducement.
 
 
 25
 Sicilia therefore cannot successfully distinguish the fraud provision in his insurance policy from California Insurance Code § 2071. Under such a provision it is clear that an insurer may void the insurance policy when the insured intentionally submits a false claim or lies about the nature of the loss. Perovich v. Glen Falls Ins. Co., 401 F.2d 145, 147 (9th Cir.1968); Baldwin v. Bankers & Shippers Ins. Co., 222 F.2d 953, 953-54 (9th Cir.1955); Cummings v. Fire Ins. Exchange, 202 Cal.App.3d 1407, 249 Cal.Rptr. 568 (1988); Zemelman v. Boston Ins. Co., 4 Cal.App.3d 15, 84 Cal.Rptr. 206 (1970). These cases, which involve only a single loss, show a willingness to impose some forfeiture upon the insured as a necessary consequence of the insured's dishonesty. For example, the Zemelman court specifically rejected the argument that a fraud provision violates public policy "when applied to the amount of damages actually brought about by a fire not caused by the insured." 4 Cal.App.3d at 19. The court stated that " '[a] judge-made policy which thus gives advantage to dishonesty will retard, not accelerate the orderly adjustment of insurance losses.' " Id. (quoting Chaachou v. American Central Ins. Co., 241 F.2d 889, 893 (5th Cir.1957)).
 
 
 26
 However, the mere fact that the provision applies to fraud committed after the purchase of a policy does not end our inquiry. Here the fraud found by the jury only infected the claim for the Sunset fire. It was in no way related to the claim for the Foothill fire. In general, not only may the insurer void the insurance policy for a fraudulent claim, but under the majority rule the insurer may void the entire policy even if the false claim relates to only one portion of the policy. Mutual of Enumclaw Ins. Co. v. Cox, 110 Wash.2d 643, 757 P.2d 499, 502 (1988) (rejecting argument that fraud should void only a portion of the policy); Home Ins. Co. v. Hardin, 528 S.W.2d 723, 724 (Ky.Ct.App.1975) (fraudulent claim for household furnishings and contents also voids the policy as to the dwelling). But see Johnson v. South State Ins. Co., 288 S.C. 239, 341 S.E.2d 793, 794-95 (1986) (refusing to void a fire insurance policy as to the dwelling when fraudulent claim only concerned the contents).
 
 
 27
 As the Johnson court recognized, the majority rule against severance of an insurance policy operates harshly against the insured. We decline to extend that rule to the circumstances of this case. To permit Safeco to void an otherwise valid insurance claim for misconduct that bears no relation to that claim would grant Safeco a benefit out of proportion to the insured's misconduct. California's definition of a "material" misstatement lends support to this conclusion. Under California law, the materiality of a false statement in an insurance claim "is determined by [the statement's] prospective reasonable relevance to the insurer's inquiry.... [I]f the misrepresentation concerns a subject reasonably relevant to the insure[r]'s investigation and if a reasonable insurer would attach importance to the fact misrepresented, then it is material." Cummings, 202 Cal.App.3d at 1417 (emphasis omitted). Cf. Nuffer v. Insurance Co. of North Am., 236 Cal.App.2d 349, 360-61, 45 Cal.Rptr. 918 (1965) (because insured could recover even though insured's agent committed arson, agent's false statements about his whereabouts before the fire were not material).
 
 
 28
 The false receipts submitted by Sicilia with his insurance claim for the second fire related only to his damages for that fire. Cummings suggests that Sicilia's misrepresentations do not constitute grounds for voiding the otherwise valid claim for the first fire because the misrepresentations were not "reasonably relevant" to the first claim. Whatever losses Sicilia may have claimed from the second fire, those claims did not interfere with Safeco's ability to "make a determination of its obligations" for damages from the first fire. 202 Cal.App.3d at 1416. Indeed, in an ideal world--one without transaction delays and costs--Sicilia would have received the funds for the Foothill fire before the Sunset fire occurred. Because Sicilia's misrepresentations in his claim for the second fire arguably are not material to Sicilia's prior valid claim, Safeco should not be able to escape liability on the first claim.
 
 
 29
 Our research has discovered only one case that confronted the problem of two fires and one fraudulent act by the insured. National Sur. Corp. v. Michigan Fire & Marine Ins. Co., 59 F.Supp. 493 (D.Minn.1944), affirmed, 156 F.2d 329 (8th Cir.1946). A fire damaged the insured's grain elevator, and the insured assigned his interest in the insurance proceeds to the plaintiff. Before the claim for the first fire was processed, the insured set fire to his grain elevator. The district court ruled that the insured's fraudulent act did not prevent the assignee from recovering insurance proceeds from the first fire: "[I]f there is no breach of a condition precedent or subsequent at the time of the loss, then a breach of a condition subsequent after the loss will not void the policy unless the fraud or breach pertains to the loss which had already occurred; ..." 59 F.Supp. at 498-99.
 
 
 30
 The Eighth Circuit affirmed. The court expressed doubt whether the insured could have enforced a claim for the first loss had he retained the claim, 156 F.2d at 332, a doubt which may have stemmed from the insured's conviction for arson in connection with the second fire. As to the assignee, the court held that it could collect on the first claim because the loss from the first fire was "a legitimate loss" that "had matured and was subject to no existing defenses or equities" at the time of assignment. 156 F.2d at 332.
 
 
 31
 Safeco argues that National Surety is distinguishable because of the assignment of the insurance proceeds from the first fire. We are not convinced. Assuming that an assignee's rights in some sense "vest" before the insured's subsequent wrongdoing, arguably the same can be said for Sicilia's rights with respect to the first fire. Unlike the insured in National Surety, Sicilia was absolved of responsibility for either fire. Furthermore, it is clear that the district court's decision did not turn on the question of assignment, as shown by the court's use of a hypothetical which parallels the present case:
 
 
 32
 Assume, for instance, that two separate and distinct fires occurred months apart, each of which partially destroyed a building covered by the policy in question. Assume further that, as to the second fire, the owner wilfully and fraudulently padded his clam in making out a proof of loss, and hence the company has an absolute defense as to any recovery as to the second fire. Could it be successfully asserted that, under the provisions of this policy, the same defense could be also asserted as to a claim for recovery by reason of the first fire and as to which there was no fraud in the making out of the proof of loss? It would seem that the question propounded suggests its own answer and that there can be no serious doubt as to the right of the insured to enforce the policy as to the first fire even though the policy became void by reason of the subsequent fraud.
 
 
 33
 59 F.Supp. at 498.
 
 
 34
 We agree with this reasoning and conclude that Sicilia was not barred from recovering under the policy for his damages from the first fire. Of course, this does not mean that information discovered in the investigation of a second incident cannot be used to challenge a claim for an earlier incident. Indeed, the second occurrence might lead to pertinent information about the first claim or may even directly demonstrate that the first claim is suspicious. Here, however, the jury found that in the light of all of the evidence Sicilia committed no wrongdoing regarding the first incident.
 
 C. Sufficiency of the Evidence
 
 35
 Safeco argues that the district court erred by denying its motion for a directed verdict on the issues of breach of statutory duties, bad faith, and punitive damages. The jury found no bad faith and awarded Sicilia no punitive damages, so any error in denying a directed verdict on these claims was harmless. As to the breach of statutory duties under California Insurance Code § 790.03(h), there is substantial evidence to support the jury's verdict. Viewing the evidence in the light most favorably to Sicilia, the jury could have concluded that Safeco acted unreasonably when it delayed paying Sicilia's claim for a prolonged period without actually denying the claim and without informing Sicilia that he was under suspicion. Contrary to Safeco's assertion, there is also substantial evidence to support the jury's award of damages to Sicilia. While there was conflicting evidence as to the amount of damages Sicilia suffered from the first fire, the jury could reasonably have believed Sicilia.
 
 D. Judgment for Safeco in the Second Action
 
 36
 Sicilia argues that the district court erred by entering judgment in favor of Safeco in the second action. Sicilia argues that he is entitled to recover for damage to his "stock" from the second fire because any misrepresentations in his insurance claim for that fire related only to the "contents" portion of the policy. The record does not support Sicilia's claim that the false receipts related only to the "contents" portion of the policy. Furthermore, the evidence also reflected other misrepresentations. We do not think that California would countenance this attempt by Sicilia to isolate the effects of his fraud regarding the second claim. See Zemelman, 4 Cal.App.3d at 19.
 
 
 37
 Sicilia's waiver claim fares no better. Safeco's alleged waiver of the right to rescind the insurance policy did not prevent judgment for Safeco in the second action. That judgment was based upon Safeco's right to void the policy because of a false claim, not the right to rescind for a false insurance application. Compare Zemelman, 4 Cal.App.3d at 19 (false proof of claim voided the insurance policy as a matter of law) with Old Line Life Ins. Co. v. Superior Court, 229 Cal.App.3d 1600, 1603, 281 Cal.Rptr. 15 (1991) (material misrepresentations in an application for insurance are grounds for rescission of the policy).
 
 E. Denial of Motions for Summary Judgment
 
 38
 The district court denied Safeco's various motions for summary judgment. We have held that the denial of a motion for summary judgment is not properly reviewable on appeal from the final judgment entered after trial. Locricchio v. Legal Services Corp., 833 F.2d 1352, 1358-59 (9th Cir.1987). "[I]t would be ... unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for trial." Id. at 1359.
 
 F. Evidentiary Rulings
 
 39
 Safeco and Sicilia each raise a number of claims of evidentiary error. We have reviewed each of the claims and find them all to be without merit. To the extent that any error arguably exists, "the jury's verdict is more probably than not untainted by the error." Haddad v. Lockheed Calif. Corp., 720 F.2d 1454, 1459 (9th Cir.1983).
 
 G. Jury Instructions
 
 40
 We have reviewed Sicilia's claims of instructional error and have determined that there was none.
 
 H. Safeco's Motions for a New Trial
 
 41
 Safeco claims that misconduct by Sicilia and his counsel warranted a new trial. Even assuming that there was some misconduct, Safeco has not shown that it affected the verdict. See Mateyko v. Felix, 924 F.2d 824, 828 (9th Cir.1990) (new trial is warranted only if counsel's misconduct affected the verdict), cert. denied, --- U.S. ----, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). Safeco also claims that it was entitled to a new trial based upon "newly discovered evidence" that Sicilia purportedly confessed to a former employee of World Wide Video that he set the first fire. The district court properly rejected this argument. Safeco had not made contact with the former employee and could not show what she would say if she were to testify. Furthermore, Safeco failed to show that the evidence in question could not have been discovered before trial through due diligence. See Jones v. Aero/Chem Corp., 921 F.2d 875, 878 (9th Cir.1990).
 
 I. Other Claims
 
 42
 We have reviewed Safeco's sundry other claims, including claims regarding the insureds under the policy, punitive damages, prejudgment interest, and the taxing of costs, and have determined that the district court did not err in any of the respects mentioned.
 
 CONCLUSION
 
 43
 The mere fact that an insured lies about one fire should not suffice to strip him of insurance coverage for an earlier, unrelated fire. Neither moral outrage nor the law demands a result at once so draconian toward the insured and so generous toward the insurer. Loss of coverage for the second fire is sufficient; further punishment can await the Dies Irae.
 
 
 44
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3