[No. B170364. Second Dist., Div. Five. Mar. 8, 2005.]

JAMES E. MITCHELL, Individually and as Trustee, etc., Plaintiff and Appellant, v.
UNITED NATIONAL INSURANCE COMPANY, Defendant and Respondent.

458

## COUNSEL

Law Office of Mann & Elias and Imad Y. Elias for Plaintiff and Appellant.

Nielsen, Haley & Abbott, James C. Nielsen and August L. Lohuaru for Defendant and Respondent.

## OPINION

**MOSK, J.—** ██ We hold that an insurer may, under Insurance Code sections 331 and 359, rescind a fire insurance policy based on an insured's negligent or unintentional misrepresentation of a material fact in an insurance application, notwithstanding the *willful* misrepresentation clause included in the required standard form fire insurance policy (Ins. Code §§ 2070 and 2071). Because there was undisputed evidence that the insurer relied upon the misstatements of material facts in the insured's application for insurance, we affirm the summary judgment.

### BACKGROUND

Plaintiff and appellant James E. Mitchell, individually and as trustee of the Mitchell Family Trust (Mitchell), appeals the trial court's entry of summary judgment in favor of defendant and respondent United National Insurance Company (United National) in Mitchell's action for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief. Mitchell individually was the named insured under an insurance policy issued by United National that provided coverage for a commercial building owned by the Mitchell Family Trust (the building).

During the policy period, the building was destroyed by arson. The arsonist, an acquaintance of Mitchell's, perished in the fire. In the ensuing investigation, United National discovered several purported misrepresentations in Mitchell's application for insurance, rescinded the policy, and offered to return Mitchell's premium. Mitchell refused to accept the return of his premium and filed this action. United National moved for summary judgment on two alternative grounds: material misrepresentations in the application for

insurance gave United National the right, under Insurance Code sections 331 and 359, to rescind the policy; and the policy's dishonest act exclusion barred coverage because Mitchell's representative, to whom Mitchell had entrusted the property, intentionally set fire to the property. The trial court granted summary judgment on both grounds.

Mitchell purchased the building in February 2000 in the name of his trust. On April 11, 2000, Mitchell's brokers submitted an application for insurance to Debra Messina of Excess & Surplus Lines Insurance Brokers, Inc., an authorized underwriter for United National. The application stated that (1) the property to be insured consisted of a 3,420-square-foot commercial building; (2) the building was to be used by Mitchell as a "video production studio and offices"; (3) the business to be conducted in the building had $20,000 in payroll and generated $300,000 in receipts; (4) there was no existing insurance on the building; (5) the building had no uncorrected fire code violations; (6) the building had a burglar alarm; and (7) Records & Records & Filmworks, Inc. (later changed to James E. Mitchell) was the purchaser of the building.

In fact, (1) the building was less than 2,000 square feet, (2) the business conducted in the building had no officers or employees, was used only to film a music video for two days in May or June of 2000, and was leased to a tenant who operated a garment business; (3) the business in the building generated approximately $6,500 in receipts from February 2000 to the time of the fire; (4) the building was insured by the California FAIR Plan, an insurer of "last resort"; (5) the building was subject to a City of Los Angeles abatement order stating that the building could not be occupied without a clearance or repaired without a permit and contained such deficiencies as being open to unauthorized entry, littered with combustible debris, excessive dry weeds or vegetation, broken windows, damaged or missing doors, damaged exterior wall covering, damaged interior wall and ceiling covering, and deteriorated flooring (and no permit had been obtained for corrective work on these deficiencies); (6) the building had no burglar alarm; and (7) the building was owned by the Mitchell Family Trust.

In July 2000, Mitchell rented the property to a tenant who operated a garment manufacturing business. In August 2000, a city inspector cited the tenant for failure to obtain a certificate of occupancy, and Mitchell was forced to release the tenant from the lease and return most of the rent payments. The property was vacant on November 22, 2000, the date of the fire.

According to Mitchell, before the property was damaged by the fire, he met Carl Robinson, who represented himself as a business consultant with a prospective buyer for the property, and gave Robinson the keys to the

property for the purpose of showing it to the prospective buyer. On November 22, 2000, while Mitchell was in Chicago, Robinson set fire to the building and was killed in the ensuing blaze.

Mitchell filed a claim for losses under the policy. United National denied the claim on the ground that it had rescinded the policy based on material misrepresentations in Mitchell's application for insurance. Mitchell filed this action against United National and the brokers who assisted Mitchell in preparing the application for insurance.[1] In his first amended complaint, Mitchell admitted that the application for insurance submitted to United National "contained inaccuracies" that caused United National to rescind the policy, but claimed that those inaccuracies were not material and were solely the fault of his brokers.

In its motion for summary judgment, United National argued that Mitchell had made material misrepresentations in his application for insurance and that United National was entitled, under Insurance Code sections 331 and 359, to rescind the policy. United National maintained that the materiality of the representations was determined under a subjective standard from the insurance underwriter's perspective, and not upon an objective "reasonable insurer" standard. United National's motion was supported primarily by the declaration of its underwriter, Debra Messina, who stated that she issued an insurance policy for the building based on the representations contained in Mitchell's application for insurance. Ms. Messina further stated in her declaration that the size and condition of the building, as well as its proposed use as an owner-occupied business, were important factors in rating the risk to be insured against and in deciding whether or not to issue an insurance policy. She declared that had she known that there were uncorrected fire code violations, that the building was substantially smaller than had been represented in the insurance application, and that the property was not to be used as studios and offices for Mitchell's own music video company, she either would have underwritten the policy differently or declined to underwrite it altogether. She also stated that the existence of prior insurance coverage under the California FAIR Plan was an important underwriting consideration because such coverage indicated past problems in acquiring insurance. She explained that the California FAIR Plan is an insurer of "last resort," affording coverage to property owners who have been rejected by traditional insurance carriers and who are thus unable to obtain insurance in the normal market. She stated that she would have undertaken further investigation had she known the property was insured under the California FAIR Plan.

Mitchell's opposition to United National's motion was supported by his own declaration and the declaration of an expert, Kelly Rossi, an insurance

---

[1] The action against the brokers was dismissed.

broker. In his declaration, Mitchell stated that he intended to use the property to make music videos and that he showed the property on several occasions to recording artists for this purpose, but that he was only able to rent the property for two to three days for one music video. Mitchell further stated that he had no knowledge of any uncorrected code violations with respect to the property or that the proper permits had not been obtained for repairs and improvements made to the property.

Ms. Rossi stated in her declaration that the purported misrepresentations in Mitchell's application for insurance "were not material to Messina in her underwriting of this policy." With regard to coverage under the California FAIR Plan policy, Ms. Rossi opined that "Messina did not believe this matter to be material" because the representation that there was no insurance on the property "is as big or even bigger 'red flag' " than coverage under the FAIR Plan. Ms. Rossi also said that as to the changes in the use of the building and absence of a central alarm system, Ms. Messina should have conducted further inquiry. Mitchell argued that the failure to do so constituted a waiver of these issues.

United National filed evidentiary objections to Mitchell's declaration, arguing that the declaration contradicted Mitchell's prior sworn testimony. United National objected to Ms. Rossi's declaration as improperly based on speculation and conjecture. The trial court sustained in part the objections to Mitchell's declaration and all of the objections to Ms. Rossi's declaration, noting that Ms. Rossi "purported to state as fact that which she had no competence to declare. She doesn't know what was in Ms. Messina's mind, and she is incompetent to testify to what was subjectively material to Ms. Messina."

The trial court granted summary judgment in United National's favor, finding "as a matter of law on the undisputed facts that the information sought by United's underwriter and denied to it by plaintiff's false answers and omissions was material to United's decision to provide insurance coverage. The uncontradicted evidence of United's underwriter confirms the importance that United attached to the information. Under these circumstances, the materiality of plaintiff's concealment is established as a matter of law." The trial court further concluded, "in addition, coverage is excluded because the loss was the consequence of the dishonest act (arson) of plaintiff's authorized representative to whom he entrusted the property for the purpose of showing it to a potential buyer (Robinson)."

## DISCUSSION

A. *Standard of Review*

■ Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

■ A defendant moving for summary judgment meets its burden of showing there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th 826, 849.) If the plaintiff does not make such a showing, summary judgment in favor of the defendant is appropriate. In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . . [T]he defendant need not himself conclusively negate any such element . . . ." (*Id.* at p. 853.)

■ On appeal from a summary judgment, an appellate court makes "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].) We review the trial court's evidentiary rulings made in connection with a summary judgment motion for abuse of discretion. (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169 [121 Cal.Rptr.2d 79].)

B. *Rescission Based on Misrepresentation*

1. *Insurance Code Sections 331 and 359*

United National based its right to rescind the policy on Insurance Code sections 331 and 359. Insurance Code section 331 states: "Concealment, whether intentional or unintentional, entitles the injured party to rescind

insurance." Insurance Code section 359 similarly provides: "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false."

■ Insurance Code sections 331 and 359 are part of a larger statutory framework that imposes "heavy burdens of disclosure" "upon both parties to a contract of insurance, and any material misrepresentation or the failure, whether intentional or unintentional, to provide requested information permits rescission of the policy by the injured party." (*Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 179–180 [243 Cal.Rptr. 639] (*Imperial*).)[2] Insurance Code section 332, for example, requires each party to an insurance contract to disclose, "in good faith, all facts within his knowledge which are or which he believes to be material to the contract . . . ." The disclosure obligations imposed by these statutes are directed specifically at the formation of the insurance contract. Insurance Code section 334 states: "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the *proposed contract*, or in making his inquiries." (Ins. Code, § 334, italics added.) Insurance Code section 356 provides: "The completion of the contract of insurance is the time to which a representation must be presumed to refer."

■ Requiring full disclosure at the inception of the insurance contract and granting a statutory right to rescind based on concealment or material

---

[2] The relevant provisions of the Insurance Code, also cited by the court in *Imperial, supra,* 198 Cal.App.3d at page 180, footnote 8, are:

"§ 330. *Concealment defined.* Neglect to communicate that which a party knows, and ought to communicate, is concealment.

"§ 331. *Effect of concealment.* Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.

"§ 332. *Required disclosure.* Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining.

"§ 334. *Materiality.* Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries.

"§ 356. *Time of reference.* The completion of the contract of insurance is the time to which a representation must be presumed to refer.

"§ 358. *Falsity.* A representation is false when the facts fail to correspond with its assertions or stipulations.

"§ 359. *Effect of material false representation.* If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false.

"§ 360. *Materiality.* The materiality of a representation is determined by the same rule as the materiality of a concealment."

misrepresentation at that time safeguard the parties' freedom to contract. "[An insurance company] has the unquestioned right to select those whom it will insure and to rely upon him who would be insured for such information as it desires as a basis for its determination to the end that a wise discrimination may be exercised in selecting its risks." (*Robinson v. Occidental Life Ins. Co.* (1955) 131 Cal.App.2d 581, 586 [281 P.2d 39].)

 Courts have applied Insurance Code sections 331 and 359 to permit rescission of an insurance policy based on an insured's negligent or inadvertent failure to disclose a material fact in the application for insurance (see, e.g., *Telford v. New York Life Ins. Co.* (1937) 9 Cal.2d 103, 105 [69 P.2d 835]; *Dinkins v. American National Ins. Co.* (1979) 92 Cal.App.3d 222, 232 [154 Cal.Rptr. 775]; *Thompson v. Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 915–916 [109 Cal.Rptr. 473, 513 P.2d 353]; *Williamson & Vollmer Engineering, Inc. v. Sequoia Ins. Co.* (1976) 64 Cal.App.3d 261, 273 [134 Cal.Rptr. 427]), including an application for a policy affording coverage against fire loss. (*Imperial, supra,* 198 Cal.App.3d at p. 182 [summary judgment affirmed in favor of insurer based on right to rescind fire policy because of insured's misrepresentations in insurance application].) One authority has noted that under Insurance Code sections 331 and 359, "misstatement or concealment of 'material' facts is ground for rescission *even if unintentional.* The insurer need not prove that the applicant-insured actually intended to deceive the insurer." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2004) (Croskey) ¶ 5:169, p. 5-32.4; see also *Thompson v. Occidental Life Ins. Co., supra,* 9 Cal.3d at pp. 915–916.) One court has said that materiality is determined under "a *subjective* test; the critical question is the effect the truthful answers would have had on [the insurer], not on some 'average reasonable' insurer." (*Imperial, supra,* 198 Cal.App.3d at p. 181.)

### 2. *Insurance Code Sections 2070 and 2071*

Insurance Code section 2070 provides: "All fire policies on subject matter in California shall be on the standard form, and, except as provided by this article shall not contain additions thereto. No part of the standard form shall be omitted therefrom except that any policy providing coverage against the peril of fire only, or in combination with coverage against other perils, need not comply with the provisions of the standard form of fire insurance policy or Section 2080; provided, that coverage with respect to the peril of fire, when viewed in its entirety, is substantially equivalent to or more favorable to the insured than that contained in such standard from fire insurance policy."[3]

---

[3] Insurance Code section 2080 states: "Except as otherwise provided in this article, clauses imposing specified duties and obligations upon the insured and limiting the liability of the

■ The California Standard Form Fire Insurance Policy is set forth at Insurance Code section 2071.[4] The standard form policy contains the following provision concerning an insured's concealment or misrepresentation of a material fact: "Concealment, fraud: This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." To void a policy based on the insured's violation of the standard form policy's fraud and concealment provision, "the false statement must have been knowingly and willfully made with the intent (express or implied) of deceiving the insurer. The materiality of the statement will be determined by the *objective* standard of its effect upon a *reasonable* insurer." (*Cummings v. Fire Ins. Exchange* (1988) 202 Cal.App.3d 1407, 1414–1415, fn.7 [249 Cal.Rptr. 568] [voiding fire insurance policy based on insured's fraudulent claim for policy benefits].) ■ An insurer's right to void a fire insurance policy under Insurance Code section 2071 is therefore more limited than the right to rescind accorded by Insurance Code sections 331 and 359.

## C. *Insurance Code Sections 2070 and 2071 Do Not Preclude Rescission Under Insurance Code Sections 331 and 359*

■ Even though we are affirming the summary judgment on a ground relied upon by the trial court (Code Civ. Proc., § 437c, subd. (m)(2))—i.e., that Insurance Code sections 331 and 359 apply—we gave the parties an opportunity to address by letter brief the application of Insurance Code sections 2070 and 2071. Mitchell argues in his letter brief, for the first time on appeal, that the fraud and concealment provision of the standard form policy set forth in Insurance Code section 2071, and required by Insurance Code section 2070, limits an insurer's right to rescind a fire insurance policy based on misrepresentations in an insurance application to circumstances when the insured has willfully concealed or misrepresented a material fact. Although this issue was not argued before the trial court, an appellate court

---

insurer may be attached to the standard form. Such clauses shall be in the rider or riders attached to the standard form of policy and shall be in type as provided in Section 2073."

[4] "The first Standard Fire Policy law was enacted in Massachusetts in 1873. New York enacted its first legislation on the subject in 1886, followed by the 1891 policy and the current 1943 policy. Between 1873 and 1942, many different Standard Fire policies were used in the several states. The Standard Fire Policy adopted by law in New York State in 1943 has been approved by the majority of the states, in some instances with minor modifications. Thus, the New York Standard Fire policy has been eventually a nationwide standard." (Property and Liability Insurance Handbook (Long & Gregg, eds. 1965), p. 59.) The current California standard form fire insurance policy is based on the standard fire policy adopted in New York in 1943 with some modifications. (Beach Vasey, Legislative Secretary, mem. to Governor Earl Warren, re Sen. Bill No. 1282 (Stats. 1949, ch. 556, p. 954) June 2, 1949.)

has discretion to consider an issue raised for the first time on appeal if it presents a pure question of law on undisputed evidence, such as the applicability of a statute. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 24 [44 Cal.Rptr.2d 370, 900 P.2d 619].) We exercise the discretion to do so here.

There is no authority to support Mitchell's argument that the fraud and concealment provision in Insurance Code section 2071, and not Insurance Code sections 331 or 359, governs the right to rescind a fire insurance policy based on misrepresentations in the insurance application, apart from the following statement in one insurance treatise: "The apparent effect of [the fraud and concealment] provision [in the standard form fire insurance policy] is that a fire insurance policy cannot be rescinded for merely negligent omissions or misstatements in the application." (Croskey, supra, ¶ 5:171, p. 5–33.) The issue of whether section 2071—requiring willful misrepresentation to void a fire insurance policy—conflicts with Insurance Code sections 331 and 359—permitting rescission of an insurance policy for a negligent or unintentional misrepresentation—or whether the statutes may be reconciled, appears to be one of first impression.

■ To address this issue, we apply certain fundamental rules of statutory interpretation. "We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. [Citations.] When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].)

■ Insurance Code section 2070 states that "[n]o part of the standard form shall be omitted" unless "that coverage with respect to the peril of fire, when viewed in its entirety, is substantially equivalent to or more favorable to the insured than that contained in such standard form fire insurance policy." Thus, fire insurance policies must contain certain standard terms that guarantee a minimum level of coverage. That provision does not exclude the application of other statutory provisions, such as Insurance Code sections 331 and 359, which govern the disclosure obligations between insurer and insured with respect to all types of insurance policies. It makes no sense to exclude a fire insurance contract from the protections, benefits, and obligations afforded by other statutes. (See Ins. Code, § 41 ["All insurance in this State is governed by the provisions of this code"].)

■ Neither the fraud and concealment provision of Insurance Code section 2071 nor Insurance Code section 2070 mandating the standard form purport to restrict the application of Insurance Code sections 331 and 359 to fire insurance policies. In this respect, there is no reason to treat fire insurance policies differently than other types of insurance policies.[5] Most insurance policies provide coverage for more than just fire.

■ Insurance Code sections 331, 359, and 2070 were enacted together (Stats. 1935, ch. 145, §§ 331, 359, 2070, pp. 505, 506, 596),[6] and must therefore be harmonized with each other. (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129] [courts must harmonize " 'various parts of the statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole' "].) The requirement in Insurance Code section 2070 that a fire insurance policy be on a standard form does not preclude the application of regulatory statutes, such as Insurance Code sections 331 and 359.

■ Different statutes within the same code should be interpreted to be consistent. (*Board of Retirement of the Kern County Employees' Retirement Association v. Ballino* (2005) 126 Cal.App.4th. 781 [24 Cal.Rptr.3d 384]; see also *Pacific Southwest Realty Co. v. County of Los Angeles* (1991) 1 Cal.4th 155, 167 [2 Cal.Rptr.2d 536, 820 P.2d 1046].) Accordingly, that the standard form policy does not provide for the consequences of a nonwillful misrepresentation or concealment should not be read to prevent the application of other Insurance Code provisions that do.

■ Freedom of contract and the right of an insurer to make an informed decision whether or not to insure a given risk are strong policy considerations that support more liberal rescission rights for misrepresentations made at the inception of the insurance contract. As one authority has noted: "Despite the significant statutory prescription of fire insurance policy terms, contracts of this kind are treated as voluntary contracts rather than legislative enactments, since they derive their force and efficacy from the consent of the parties." (10 Couch on Insurance (3d ed. 1998) § 149:3, p. 149-10.)

---

[5] One authority states, however, that, "courts, departing from the law of marine insurance, now have generally adopted the view that the concealment of a material fact, when not made the subject of express inquiry by the insurers, must be intentional to avoid the fire policy." (Sowers, Concealment, Misrepresentation, Fraud or False Swearing in The Fire Insurance Contract: Its History and Interpretation (1922 The Insurance Society of New York) pp. 96–97.) Here, the application itself makes express inquiries.

[6] California law provided for a standard form fire insurance policy in 1909. (Stats. 1909, ch. 267, p. 404.) Neither that form nor the form enacted in 1935 (Stats. 1935, ch. 145, pp. 596–603) required a willful misrepresentation or concealment to void the policy. The current form was enacted in 1949 (Stats. 1949, ch. 556, § 2, p. 955).

■ Both Insurance Code sections 331 and 359 and the fraud and concealment provisions of the standard form policy prescribed by Insurance Code section 2071 apply to misrepresentations made at any time. But Insurance Code sections 331 and 359 normally govern the parties' obligations during formation of the insurance contract, and allow an insurer to *rescind* a fire insurance policy based on an insured's negligent or unintentional concealment or misrepresentation of a material fact. The standard fraud and concealment provision of the standard fire insurance policy required by Insurance Code section 2071 typically is exercised in connection with a claim for policy benefits. (See, e.g., *Cummings v. Fire Insurance Exchange, supra,* 202 Cal.App.3d 1407.) Under Insurance Code section 2071, willful concealment or misrepresentation results in a *voiding* of the policy.

■ We conclude that the fraud and concealment provision in the standard policy, as prescribed by Insurance Code section 2071 and requiring the insurer to prove a misrepresentation was willful in order to void the policy does not affect the application of Insurance Code sections 331 and 359, allowing the insurer to rescind the policy in the event of a negligent or unintentional misrepresentation. Accordingly, Insurance Code section 2071 did not preclude United National from exercising its rights under Insurance Code sections 331 and 359 to rescind the policy based on negligent or unintentional misrepresentations in Mitchell's application for insurance.[7]

D. *Misrepresentation of Material Facts*

In the instant case, there was undisputed evidence that Mitchell's application for insurance contained misstatements of fact concerning the size and use of the building, the existence of building code violations, and the existence of insurance coverage for the property.[8] Mitchell, in his first amended complaint, conceded that the application submitted to United National "contained inaccuracies." He also acknowledged in other testimony and filings that the

---

[7] In New York, as in California, an insurer has the statutory right to rescind an insurance policy based on material misrepresentation in an insured's application for insurance. (N.Y. Ins. Law § 3105; *Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan* (2d Cir. 1996) 77 F.3d 48, 52–53.) Courts in New York have applied this statutory rescission right to a fire insurance policy (*Curanovic v. New York Central Mutual Fire Ins. Co.* (2003) 307 A.D.2d 435 [762 N.Y.S.2d 148, 150–151]), even though the New York standard fire insurance policy contains a fraud and concealment provision identical to that in the California standard form policy, voiding the policy in the event of the insured's *willful* concealment or misrepresentation of a material fact (N.Y. Ins. Law § 3404). In *Curanovic,* the court held there was insufficient evidence of materiality. (See *McLaughlin v. Nationwide Mutual Fire Insurance Company* (2004) 8 A.D.3d 739 [777 N.Y.S.2d 773, 774] ["material misrepresentation, even if innocent or unintentional, is sufficient to warrant a rescission of the policy"]; *Nationwide Mut. Fire Ins. Co. v. Pascarella* (N.D.N.Y. 1998) 993 F.Supp. 134, 136.)

[8] Although the parties disputed whether Mitchell had misrepresented his ownership interest in the property, because there is undisputed evidence that Mitchell's application for insurance

application contained incorrect information, but he asserted that any such inaccuracies were unintentional and immaterial and that United National waived its right to rescind.

The materiality of a misrepresentation is determined by its probable and reasonable effect upon the insurer. (Ins. Code, § 334.) The misrepresentation need not relate to the loss ultimately claimed by the insured. (*Torbensen v. Family Life Ins. Co.* (1958) 163 Cal.App.2d 401, 405 [329 P.2d 596].) The test for materiality is whether the information would have caused the underwriter to reject the application, charge a higher premium, or amend the policy terms, had the underwriter known the true facts. (*Old Line Life Ins. Co. v. Superior Court* (1991) 229 Cal.App.3d 1600, 1604 [281 Cal.Rptr. 15] [" 'The most generally accepted test of materiality is whether or not the matter misstated could reasonably be considered material in affecting the insurer's decision as to whether or not to enter into the contract, in estimating the degree or character of the risk, *or in fixing the premium rate thereon'* [Citations.]"]; *Holz Rubber Co., Inc. v. American Star Ins. Co.* (1975) 14 Cal.3d 45, 61 [120 Cal.Rptr. 415, 533 P.2d 1055] ["Materiality is determined by the probable and reasonable effect that truthful disclosure would have had upon the insurer in determining the advantages of the proposed contract. [Citations.] Essentially, we must decide whether the insurer was misled into accepting the risk or fixing the premium of insurance. [Citations.]"].) "This is a *subjective* test; the critical question is the effect truthful answers would have had on [the insurer], not on some 'average reasonable' insurer." (*Imperial, supra,* 198 Cal.App.3d at p. 181; see also *Cummings v. Fire Ins. Exchange, supra,* 202 Cal.App.3d at pp. 1414–1415, fn. 7; *Coca Cola Bottling Co. v. Columbia Casualty Ins. Co.* (1992) 11 Cal.App.4th 1176, 1189, fn. 4 [14 Cal.Rptr.2d 643].)

Mitchell argues that whether the misrepresentations in his application were material is necessarily a question of fact. An authority has written that "[c]ourts are split on whether the insured's answers to questions in the insurance application must be regarded as material as a matter of law, or whether their materiality is a question of fact in each case." (Croskey, *supra,* ¶ 5:208, p. 5-40.1; compare *Ransom v. Penn. Mutual Life Ins. Co.* (1954) 43 Cal.2d 420, 427 [274 P.2d 633] ["An incorrect answer on an insurance application [is not grounds for rescission] where the true facts, if known, would not have made the contract less desirable to the insurer"] and *Thompson v. Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 916 [109 Cal.Rptr. 473, 513 P.2d 353] ["the trier of fact is not required to believe the 'post mortem' [*sic,* postloss] testimony of an insurer's agent that insurance would have

---

contained other factual misstatements, we need not determine whether representations concerning ownership of the property were false, and if so, whether they were material for purposes of rescinding the policy.

been refused had the true facts been disclosed"] with *Cohen v. Penn Mut. Life Ins. Co.* (1957) 48 Cal.2d 720, 726 [312 P.2d 241] ["The fact that defendant put the questions in writing and asked for written answers was itself proof that it deemed the answers material"].)[9]

In *Imperial, supra,* 198 Cal.App.3d at page 179, the court suggested that the issue of materiality of a misrepresentation in an insurance application may be one of law by stating, " 'The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law.' [Citations.]" The court also stated when there is undisputed evidence that false information was given in an application for insurance and the insurer issued a policy in reliance upon this information, the materiality of a misrepresentation or concealment may be established as a matter of law. (*Id.* at p. 182.) Yet, the court gave some indication of possible factual issues in a determination of materiality by stating, "Defendants offer us no evidentiary assistance on this point [materiality], but content themselves with the naked argument that since a jury might 'disbelieve' all of the uncontradicted evidence presented by [the insurer], they are entitled to a trial on the question of materiality." The court went on to say that materiality was established by "the nature of the insurance coverage which defendant sought, the quality and quantity of the information which was not disclosed," in addition to the fact that the insurer "specifically requested the information on its application and therefore relied upon it in issuing the policy." (*Id.* at pp. 181–182.)

It seems unreasonable to conclude that an incorrect answer to any question on an insurance application automatically would constitute a material misrepresentation for purposes of rescission. For example, there might be instances when the question on the application is not relevant to an underwriting decision or the answer is such that the insurance company could not have relied upon it. Thus, we can conceive of situations when the issue of materiality might be a factual one. No such factual issues are presented here.

The application questions in this case plainly impact decisions on whether to insure and the premium to charge. In his response to defendant's statement of undisputed material facts, Mitchell admitted that questions concerning the ownership, size and condition of the building, the nature of the business to be conducted, and its payroll and receipts, and the existence of insurance under

---

[9] The general rule is that "materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it.' " (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 977 [64 Cal.Rptr.2d 843, 938 P.2d 903]; see *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1164 [23 Cal.Rptr.3d 335]; but see 5 Witkin, Cal. Procedure (4th ed. 1997) Pleadings, § 674, p.133 [materiality a question of law].)

the FAIR Plan were factors impacting either the underwriting decision or the amount of the premium and coverage, and that his answers to these questions may have affected the decision to bind coverage and the amount of the premium. United National's representative, Ms. Messina, said she relied upon Mitchell's answers to the questions, including the condition of the building, its use, and whether it was covered by insurance. Contrary to Mitchell's argument, Ms. Messina had no obligation to verify the accuracy of the representations. (*Robinson v. Occidental Life Ins. Co., supra,* 131 Cal.App.2d at p. 585 [in connection with an insurance application "[i]t was not incumbent upon [insurer] to investigate [insured's] statements made to the examiner. It was [insured's] duty to divulge fully all he knew"].)

The evidence of materiality of the misrepresentations is uncontradicted. The application was for significant insurance covering the peril of fire. The information sought went directly to questions of insurability, risk, and premium. The insured admitted that there were misrepresentations on the application, and that the insurer considered the information important to its underwriting decisions. Under these circumstances, a reasonable trier of fact could not find that the representations in this case were not material. (See *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 856 [court may determine on summary judgment motion what evidence could show or imply to a reasonable trier of fact]; *Imperial, supra,* 198 Cal.App.3d at p. 181.)

E. *No Waiver of Right To Rescind*

Mitchell argues that the misstatements contained in his application for insurance were such that they should have prompted United National's underwriter to investigate matters further and that by failing to investigate, United National waived its right to rescind the policy. "Waiver is the intentional relinquishment of a known right. [Citations.] An insurer does not waive its right to rescind a policy on the ground of false representations if it was unaware of the falsity of those representations. [Citations.]" (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 824 [44 Cal.Rptr.2d 56]; see Ins. Code, § 336 ["The right to information of material facts may be waived, either (a) by the terms of the insurance or (b) by neglect to make inquiries as to such facts, where they are distinctly implied in other facts of which information is communicated"].)

In support of his waiver argument, Mitchell offered the declaration of his expert, Ms. Rossi. The trial court ruled that declaration inadmissible, a ruling we affirm, as discussed *post.* But even if Ms. Rossi's declaration was admissible, she did not dispute that information sought by United National concerning ownership and size of the building, the type of business to be conducted and its payroll and receipts, existing insurance coverage, and the

existence of uncorrected code violations and a functioning alarm system was relevant to the underwriting decision.

 Ms. Rossi opined that if United National's underwriter, Ms. Messina, truly believed this information was important, she would have undertaken further investigation. Ms. Rossi cites no facts, however, that should have alerted the underwriter of the need to investigate Mitchell's representations concerning the size of the building, the payroll and receipts of the business to be conducted in it, the existence of an alarm system, or code violations. There is no evidence that Ms. Messina knew these representations were untrue. As noted, an insurer has the right to rely on the insured's answers to questions in the insurance application without verifying their accuracy. (*Robinson v. Occidental Life Ins. Co., supra,* 131 Cal.App.2d at p. 585.)

Ms. Rossi asserted that Mitchell's representation concerning the absence of insurance coverage for the building was "as big or [an] even bigger 'red flag' " than coverage under a California FAIR Plan policy and should have prompted Ms. Messina to investigate this representation further. Even if the failure to investigate this issue caused United National to waive the right to rescind its policy based on Mitchell's misrepresentation concerning insurance coverage, it had ample grounds for rescinding the policy based on other misrepresentations in Mitchell's application. Accordingly, United National did not waive its right to rescind the insurance policy.

## F. *Evidentiary Rulings*

Mitchell contends the trial court improperly excluded the declaration of his expert, Ms. Rossi, offered to show that the misrepresentations in Mitchell's insurance application were not material to the underwriter and that United National waived its right to rescind by failing to investigate certain facts. It might be possible to submit evidence, even expert evidence, that would create a triable issue of fact as to whether an insurer reasonably relied on certain representations or that representations were not material. For example, evidence of industry practice might conceivably have some relevance, even though it has been said that the test of materiality of and reliance on a representation in an insurance application is a "subjective" one. (*Imperial, supra,* 198 Cal.App.3d at p. 181.)

Ms. Rossi's opinions, however, purported to state what Ms. Messina allegedly knew or should have done. She expressly stated that her opinion is

that the representations at issue "were not material to Messina in her underwriting of this policy." Also, much of Ms. Rossi's declaration dealt with the issue of waiver, i.e., that the representations could not have been reasonably relied upon by United National's underwriter, Ms. Messina, because she should have investigated certain matters further. These conclusions were based on speculation about what Ms. Messina knew, considered, or concluded.

Evidence Code section 801, subdivision (b) restricts expert testimony to opinions based on "matter . . . perceived by or personally known to the witness" when that matter "is of a type that reasonably may be relied upon by an expert in forming an opinion . . . ." "[A]n expert opinion based on speculation or conjecture is inadmissible." (*Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564 [115 Cal.App.4th 621, 10 Cal.Rptr.3d 34]; see Cal. Law Revision Com. com., Deering's Ann. Evid. Code (2004 ed.) foll. § 801, p. 10 ["irrelevant or speculative matters are not a proper basis for an expert's opinion"].) The trial court was within its discretion to conclude that Ms. Rossi's opinions were not based on reliable "matter." (Evid. Code, § 801, subd. (b); 1 Witkin, Cal. Evidence (4th ed. 2000) Opinion Evidence, § 30, p. 560.)

Even if materiality could be a question of fact, testimony as to what someone else considered material is the type of speculation that a trial court may, in its discretion, exclude as not being appropriate opinion evidence. Moreover, without abusing its discretion, the trial court could have determined that much of Ms. Rossi's discussion of what the underwriter should have done constituted inadmissible conclusions. (1 Witkin, Cal. Evidence, *supra*, § 89, pp. 636–637 ["judge retains discretion to disallow question on ultimate issue"]; *Walker v. Countrywide Home Loans, Inc., supra,* 98 Cal.App.4th at p. 1169.)

Even if Ms. Rossi's declaration had been admitted in evidence, her opinions, even if accepted, do not establish that all of Ms. Messina's considerations and determinations were unreasonable under the circumstances. Ms. Rossi admitted that some of the information sought by United National in the application for insurance was relevant to underwriting the risk or setting the amount of the premium. She also did not dispute that Mitchell's responses concerning the size and ownership of the building, the payroll and receipts of the business conducted, and the existence of insurance were false. She concluded that there was "very little reliance on the representations made in the application"—a conclusion that concedes there was some reliance on the representations. And she acknowledged that at least one misrepresentation affected the amount of premium and coverage. Accordingly, Ms. Rossi's declaration, even if considered, would not create a triable issue of fact as to materiality or waiver.

## CONCLUSION

The undisputed evidence showed that there were material misrepresentations in Mitchell's application for insurance. United National had the right to, and did, rescind the policy based on these misrepresentations. (Ins. Code, §§ 331, 359.) The trial court therefore properly granted summary judgment. Because we uphold the summary judgment on this basis, we need not determine whether the policy's dishonest act exclusion barred coverage in this case.

## DISPOSITION

The judgment is affirmed. United National is awarded its costs on appeal.

Turner, P. J., and Armstrong, J., concurred.