Filed 11/16/23  Brooks v. One Miracle Property CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BRENT BROOKS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>ONE MIRACLE PROPERTY, LLC,<br><br>    Defendant and Respondent. | 2d Civ. No. B324231<br>(Super. Ct. No. 56-2019-00527617-CU-PO-VTA)<br>(Ventura County) |

An independent contractor was hired to clean solar panels on the roof of a commercial building.  A worker employed by the independent contractor was injured when he tripped and fell through a skylight.  The worker sued the building owner alleging, among other causes of action, the failure to warn of a concealed hazard.  The trial court granted summary judgment to the building owner on the ground that a landowner is not liable for injuries to an employee of an independent contractor.  The court concluded that no exception to the rule applied.  We affirm.

# FACTS

One Miracle Property, LLC (One Miracle) owns multiple properties, including a commercial building in Oxnard (Oxnard building). One Miracle purchased the land in 1997 and built the Oxnard building in 2004. The Oxnard building's roof has skylights, solar panels, and electrical conduits for the solar panels.

For more than a decade, West Hills Construction, Inc. (West Hills), a licensed general contractor, has performed construction work for One Miracle, including work on the Oxnard building. One of West Hills' ongoing tasks is to maintain and oversee the solar panels and skylights on the roof of the Oxnard building. West Hills inspects the roof several times a year. Should any repairs or maintenance be required, West Hills performs the work or hires a subcontractor. Prior to July 18, 2018, West Hills marked certain skylights on the Oxnard building for replacement, not because the skylights were defective, but because a different model was preferred. At all times West Hills was an independent contractor for One Miracle.

On or about July 19, 2018, West Hills subcontracted with KCM Landscaping Services, Inc. (KCM), an independent contractor, to clean the solar panels on the Oxnard building's roof. West Hills did not supervise KCM's work and no one from One Miracle was present while KCM was working.

On July 19, 2018, Brent Brooks was employed by KCM, assisting in cleaning the solar panels on the Oxnard building's roof. He tripped on a conduit, fell through a skylight, and landed on cardboard boxes below. Although Brooks landed on cardboard boxes, he suffered significant injuries.

Brooks admitted that he knew there were skylights on the roof and that he could distinguish what was a skylight. He testified that due to the location of the Oxnard building next to a factory, the skylights were covered with a dusty film.

## DISCUSSION

### I. Standard of Review

Summary judgment is properly granted only if all papers submitted show there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) The trial court must draw all reasonable inferences from the evidence set forth in the papers except where such inferences are contradicted by other inferences or evidence that raise a triable issue of fact. (*Ibid.*) In examining the supporting and opposing papers, the moving party's affidavits or declarations are strictly construed and those of the opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Szadolci v. Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19.)

The moving party has the initial burden of showing that one or more elements of a cause of action cannot be established. (*Saelzer v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) Where the moving party has carried that burden, the burden shifts to the opposing party to show a triable issue of material fact. (*Id.* at p. 767.)

On summary judgment, once the defendant establishes that the *Privette* presumption of non-liability pursuant to *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*) , applies, the burden shifts to the plaintiff to raise a triable issue of fact as to whether one of the exceptions applies. (*Miller v. Roseville Lodge*

3

*No. 1293* (2022) 83 Cal.App.5th 825, 834.)  Our review of the trial court's grant of the motion is de novo.  (*Saelzer v. Advanced Group 400*, *supra*, 25 Cal.4th at p. 767.)

*II. Rules of Liability*

In *Privette, supra*, (1993) 5 Cal.4th, our Supreme Court held that a property owner hiring an independent contractor is not liable for work-related injuries suffered by an employee of the independent contractor.  (*Id.* at p. 702.)  The employee's remedy is in workers' compensation.  (*Ibid.*)

Brooks relies on an exception to the *Privette* rule stated in *Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, holding that a landowner may be liable to an independent contractor's employee for a concealed hazardous condition on the property.  The landowner's liability under this exception applies only where: 1) the landowner knew, or should have known, of a pre-existing latent or concealed hazardous condition on its property; 2) the contractor did not know and could not have reasonably discovered the hazardous condition; and 3) the landowner failed to warn the contractor about the condition.  (*Id.* at p. 664.)

*III. Evidence*

One Miracle has established by uncontradicted evidence that both West Hills and Brooks' employer KCM were independent contractors.  Thus, One Miracle established that the *Privette* presumption of non-liability applies.  (See *Miller v. Roseville Lodge No. 1293*, *supra*, 83 Cal.App.5th at p. 834.)

Brooks relies on the declaration of William Dexter.  Dexter is the former director of the Center for Construction Education at California Polytechnic State University San Luis Obispo.  Dexter declared in part:

4

"The evidence submitted by [One Miracle] in support of the summary judgment motion, . . . , shows that [One Miracle] built the [Oxnard] building in 2004; with no other evidence, I can only assume that the skylights were installed at that time. The injuries sustained by Mr. Brooks were the result of two factors, namely failure by [One Miracle] to install the required fall restraint guards above or below the skylights during the original construction and failure to periodically replace the skylight domes after extended periods of exposure to the known harmful and deleterious effects of the [ultraviolet (UV)] spectrum of sunlight.

"The relevant provision of the Code of California Regulations is [title 8, section 3212]: Floor Openings, Floor Holes, Skylights and Roofs. As amended with an operative date of November 8, 1993, this section of the code states in pertinent part as follows:

"(e) Any employee approaching within 6 feet of any skylight shall be protected from falling through the skylight or skylight opening by any one of the following methods: [¶] (1) Skylight screens installed above the skylight . . . . [¶] (2) Skylight screens installed below the skylight . . . .

"When the [Oxnard] building was constructed in 2004, therefore, it was subject to the laws mandating skylight screens, installed above or below the skylights. The description of the fall presented in the evidence shows no indication that any screen was ever present, and, the evidence submitted by the movant includes no reference to any screen ever having been installed. If such screens had been present, the fifteen-to-twenty-foot fall described by Mr. Brooks . . . would have been stopped much earlier.

5

"The absence of the legally required skylight screens made the skylight at issue significantly more dangerous than a skylight with the legally required screen.

"Because the law requiring screens was in effect at the time the [Oxnard] building was constructed, it would be reasonable to assume that such screens were installed on the skylights at issue here. It would be reasonable for the people on the skylights to assume that the screens were installed below the skylights since no above-skylight screens were visible. I found nothing in the evidence submitted in support of the motion indicating that either One Miracle Property LLC or West Hills Construction, Inc. ever told anyone that the skylights at issue did not include the legally required screens.

"The declarations of both [One Miracle and West Hills employees] state that West Hills only inspected the roof. Neither such an inspection nor merely working on the roof (as plaintiff Brooks did) would disclose that the legally required safety screen had not been installed below the skylight. There is no way for a 'rooftop' observer to visually verify that a safety screen had been installed beneath the skylight since the skylight dome is translucent white. The only method of inspection would be to go into the area beneath the skylight and look up at dome. It would be obvious if the screens were installed. This would be part of a reasonable inspection to determine the presence or absence of any dangerous conditions.

"In addition, [California Code of Regulations, title 8, section 1632, subdivision (b)(3)], specifies in pertinent part that any '[c]overs' on a skylight or other roof opening 'shall be capable of safely supporting the greater of 400 pounds or twice the weight of

6

the employees, equipment and materials that may be imposed on any one square foot area of the cover at any time . . . .'

"Mr. Brooks's deposition reflects, at page 63, that he weighed 230 pounds; the polymer dome should have prevented the fall. That he fell through the dome is due to the fact that [UV] spectrum of sun light causes deterioration of the dome over time.

"[A photograph] shows the damage to the skylight from Mr. Brooks falling against it. Exposure to [UV] radiation causes significant degradation of many polymer plastic materials. UV radiation causes degradation by promoting oxidation which results in breaking of the polymer chains and reduces the molecule weight, causing deterioration of the mechanical strength.

"[A photograph] shows that the dome over the skylight at issue was so eroded that there was no elasticity left so it shattered like a cracker.

"A reasonable inspection of skylights would require more than a check for safety screens by looking up from the area below the skylight. Such an inspection would also require a close look at the polymer domes over the skylights to check for the micro-cracking and other signs of fatigue. If the skylights had been reasonably inspected at any time within five (5) years before the accident, the absence of safety screens should have been discovered; the existence of fatigue or micro-cracking should also have been discovered. It is remotely possible that the existence of fatigue or micro-cracking may not have been discovered unless a reasonable inspection occurred within a year prior to the accident.

"This deterioration gives a polymer plastic skylight dome a serviceable life expectancy of between five and fifteen years, depending upon the weather and temperature of the skylight's location. The deterioration also represents an expected performance limitation of polymer plastic products and frequent and repeated injuries involving skylights. Photooxidation of organic materials is a major cause of irreversible deterioration for a large number of substances. It is responsible not only for the loss of physical properties of plastics and rubber but has contributed to the high incidence of skylight fractures that precipitated the Cal/OSHA requirements for safety features such as screens, guard [rails] or safety netting installed in skylights.

"That the [Oxnard] building was constructed (and skylights installed) in 2004 means that the dome at issue has been deteriorating since 2004; as of the date of the accident at issue, the dome over the skylight at issue was also at the end of its serviceable life. Separately and independently of the absence of skylight screens, the deteriorated condition of the polymer dome would make the skylight significantly more dangerous than a skylight with the polymer dome intact. These dangers (deterioration, like the absence of a safety screen below the skylight), would not be visible to someone merely working (or visually inspecting) the roof." (Paragraph numbering omitted.)

Dexter's six page declaration was met by One Miracle with 80 pages of pro forma objections, none of which referenced any particular portion of the declaration. Such "blunderbuss objections" were condemned by our Supreme Court. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532.) The trial court warned that parties raising such objections may face informal

8

reprimands or formal sanctions for engaging in abusive practices. (*Ibid*.)  Here the court sustained all of the objections.

Brooks relies on *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830 (*Serri*), for the proposition that the trial court abused its discretion in giving a blanket ruling sustaining all of One Miracle's objections.  In *Serri*, the defendant moved for summary judgment.  The plaintiff presented evidence in opposition to the motion.  The defendant objected to the plaintiff's evidence.  The court issued a blanket ruling sustaining all of defendant's objections.  The Court of Appeal stated, "This blanket ruling was 'hardly a ruling,' provided no basis for review and could be treated as a failure to rule."  (*Id*. at p. 857.)  The Court of Appeal held that given the number of objections and that some were sustained in error, the trial court abused its discretion by issuing a blanket ruling.  (*Ibid*.)  Nevertheless, the Court of Appeal concluded that the error was harmless because there was no reasonable probability a result more favorable to the appellant would have been reached in the absence of the error.  (*Ibid*.)

Here we do not blame the trial court for not ruling individually on One Miracle's 80 pages of objections.  The court would have been well within its discretion to have imposed monetary sanctions and ordered One Miracle to limit its objections to a specific number of pages.  We assume the court did not do so in this case because the defects in Dexter's declaration are obvious.  If the court abused its discretion by issuing a blanket ruling sustaining all of One Miracle's objections, the error was not prejudicial.

First, much of Dexter's declaration relies on alleged violations of safety regulations contained in California Code of Regulations, title 8.  But those regulations apply to duties

9

employers owe to their employees.  Brooks was employed by KCM, not One Miracle.

Second, Dexter declares that the life expectancy of a skylight is five to 15 years, but admits he does not know the age of the skylight through which Brooks fell.  Dexter declares, "I can only assume" the skylights were installed in 2004 when the Oxnard building was constructed, 14 years prior to the accident.  Based on this assumption – without testing or even personal inspection – Dexter concludes that the skylight material had become defective through time and exposure to the elements.  Dexter's opinion is inadmissible as based on assumptions and conjecture.  (*Mitchell v. United National Insurance Co.* (2005) 127 Cal.App.4th 457, 478.)

Finally, even if Dexter's declaration were admitted, the result would be the same.  Ultimately it was KCM's duty to protect its employees from workplace injuries.  California Code of Regulations, title 8, section 3212(e), requires that employees working within six feet of a skylight shall be protected with a screen either above or below the skylight.  It would have been obvious there was no screen above the skylight.  At a minimum California Code of Regulations, title 8, section 3212(e), would mandate KCM to inquire whether there was any screen below before allowing its employees to work within six feet of a skylight.  KCM should have reasonably known that there were no screens on the skylights.  There is simply no evidence that One Miracle concealed anything from KCM.

Moreover, the uncontradicted evidence is that West Hills had the ongoing task to maintain and oversee the skylights on the roof.  It inspected the roof several times a year.  Should any repairs or maintenance be required, West Hills would perform

the work or hire a subcontractor.  West Hills marked some of the skylights for replacement because a better model was preferred, not because they were defective.  Brooks points to nothing that One Miracle knew or should have known about the skylights that made them dangerous.  Even Dexter declared that the dangerous condition would not be apparent to someone visually inspecting the roof.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to the respondent.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.


We concur:



BALTODANO, J.



CODY, J.

11

Benjamin F. Coats, Judge

Superior Court County of Ventura

_____

Law Office of Ball and Yorke, Esther R. Sorkin and Allen R. Ball for Plaintiff and Appellant.

Law Offices of Beth M. Henderson and Ann C. Hall for Defendant and Respondent.